JOSEPH JERVIS *v.* BURLINGTON MUTUAL FIRE INS. CO.

February Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 2, 1944.

*A. Pearley Feen* for the defendant.

*Charles F. Black, J. H. Macomber* and *J. H. Macomber, Jr.,* for the plaintiff.

SHERBURNE, J. This is an action upon a fire insurance policy, resulting in a verdict and judgment for the plaintiff. The only exceptions briefed are to the overruling of defendant's motions for a directed verdict and to set aside the verdict. The defenses were that the policy was avoided by fraud and misrepresentation in the proof of loss, and by the use of the building as a resort in which the public was served instead of as a private dwelling, and that the suit was premature.

The evidence viewed most favorably to the plaintiff reasonably tended to show the following facts: In September, 1940, the plaintiff purchased a vacant property in Underhill known as the Sleepy Hollow Lodge, on which was a two story frame building with 7 bed rooms, lounging rooms, an office, kitchen and dance hall. Later he repaired and improved the building and furnished it, and during the summer months of 1941 conducted it as an inn and took paying guests. He had a New Year's party on Dec. 31, 1941, and thereafter discontinued operations as an inn. During the latter part of 1941 the plaintiff began to negotiate with E. A. des Rosiers, an agent of the defendant, for insurance upon the property, and they discussed whether the plaintiff was going to occupy the property as an inn or as a private home. Early in January, 1942, the plaintiff and his wife went to New Jersey where he had obtained work, and he wrote from there on January 21 to the defendant, attention of Mr. des Rosiers, that the Lodge would no longer be used as a tourist place or a resort, but would be used as a summer home, and occupied for a few weeks during the winter, and asking for insurance. As a result the defendant wrote the policy in question on January 29, for a term of one year from January 24, insuring the lodge building for the sum of $6500.00 and the contents for $1500.00. About the last of February, upon receiving notice from Mr. des Rosiers that the property must be occupied, Mrs. Jervis returned, and resided there until a few days before the fire on

January 11, 1943, while the plaintiff continued to live and work in New Jersey, and only occasionally made visits to his wife at the Lodge. During this period no paying guests were received, except that on three occasions, on St. Patrick's, once during the summer, and at New Years, Mrs. Jervis permitted Giles Willey to have private supper and dancing parties there. On these occasions Mr. Willey brought his own food except once when he gave Mrs. Jervis $10.00 to buy some meat and have it cooked for him. After each party was over Mr. Willey gave her some money to hire help to clean up, but no pre-arranged sum. At the time of the New Year's party the Lodge had been closed, the water shut off, and Mrs. Jervis was not staying there, and Mr. Willey had to provide his own heat. On this occasion, because of lack of water, the dishes from the party had to be taken to a neighbor's for washing. The lodge building and contents were burned on January 11, 1943. Mrs. Jervis telephoned to the plaintiff about the fire, and because of his inability to come to Vermont he employed an attorney to assist her in making out a proof of loss. When this had been prepared it was sent to the plaintiff for his signature and oath to its truth. In making out the proof of loss Mrs. Jervis used an inventory of the contents of the building which had been copied by Mr. des Rosiers from a list given to him at about the time the insurance policy was issued. This inventory was typed on letter size paper with single spaces and two columns to the page, and consisted of 5½ pages. The proof lists nearly all of these items in the same order and to the same length. The proof lists three items which should not have been included and which the plaintiff insists were included by mistake, viz.: a cement mixer valued at $100.00, a piano valued at $50.00 and a radio valued at $250.00. At the time of the fire the cement mixer had been loaned to a neighbor and Mrs. Jervis forgot to mention it. The piano was one the plaintiff was going to buy when the inventory was made, but had been returned to the owner about a month before the fire. The radio had been taken to New Jersey by the plaintiff. The piano and radio were overlooked by Mrs. Jervis when the proof was being prepared. The plaintiff had been in New Jersey for a long time previous to the fire and depended upon his wife and attorney and trusted them to only include the proper items in the proof. When the proof was sent to him to execute he did not check

the lengthy list of items of personal property. Had he done so he would have discovered that the radio had been wrongfully included. The proof of loss contained a statement that, after the policy was issued, "on a few occasions insured's wife entertained paying guests." This was put in because of the three parties. The actual loss on personal property was in excess of $3500.00.

The first ground of defendant's motions is that the policy became void under the provision relative to fraud and false swearing touching any matter relating to the insurance or the subject thereof, whether before or after loss, because the evidence disclosed that there were items included in the proof which were not lost, and that they were included fraudulently. These items were the cement mixer, the piano and the radio. There is no question but that these were wrongfully included, but to be fraudulent their inclusion must have been wilful and with the intention of deceiving the defendant. 29 Am Jur Insurance, para. 1132. If they were included inadvertently and in good faith it would not be fraudulent. 29 Am Jur Insurance, para. 1133. *Mosley* v. *Vermont Mut. Fire Ins. Co.,* 55 Vt 142, 152; *Mellen* v. *U. S. Health & Accident Ins. Co.,* 83 Vt 242, 248, 75 A 273.

The plaintiff was not present at the time of the fire. He could not come to Vermont to make out the proof of loss, but had to depend upon his wife to assist his attorney in making it out. He assumed responsibility for her errors as he did for his own to the extent that they were fraudulent. *Mullin* v. *Vermont Mut. Fire Ins. Co.,* 58 Vt 113, 127, 128, 4 A 817; *Mick* v. *Royal Exch. Assurance,* 87 NJL 607, 91 A 102, 52 LRANS 1074. The plaintiff's conduct in signing the proof of loss without reading it over is to be judged in view of the circumstances and the following principles of law: It is not necessary to prove that the party charged with fraud had actual knowledge of the falsity of his representations. Haphazard falsehood and intentional passing off belief for knowledge are of the same quality as conscious misstatement of facts and furnish the element of knowledge required to make the false representation fraudulent. *Smith* v. *Badlam,* 112 Vt 143, 145, 146, 22 A2d 161; *Stevens* v. *Blood,* 90 Vt 81, 83, 96 A 697; *Slack* v. *Bragg,* 83 Vt 404, 76 A 148; *Hunt* v. *Lewis,* 87 Vt 528, 90 A 578, Ann Cas 1916 C 170. As said in *Cabot* v. *Christie,* 42 Vt 121, 126, 1 Am Rep 313; and quoted in *Smith* v. *Badlam,*

*supra; McAllister* v. *Benjamin,* 96 Vt 475, 486, 121 A 263, 267; and in *Fitzgerald* v. *Metropolitan Life Ins. Co.,* 90 Vt 291, 303, 98 A 498, 504; "A representation of a fact, as of a party's own knowledge, if it prove false, is, unless explained, inferred to be wilfully false and made with an intent to deceive, at least in respect to the knowledge which is professed." But no misrepresentation is fraudulent at law, unless it is made with actual knowledge of its falsity or under such circumstances that the law must necessarily impute such knowledge to the party at the time he makes it, and the law raises no presumption of knowledge from the mere fact that the representation was false. *Smith* v. *Badlam, supra; Newman* v. *Kendall,* 103 Vt 421, 423, 424, 154 A 662; *Caldbeck* v. *Simanton,* 82 Vt 69, 77, 71 A 881, 20 LRANS 844.

The defendant does not point out wherein the plaintiff of his own knowledge should have known that the cement mixer and piano were not lost in the fire. So far as appears the radio was the only article that he might have discovered was improperly included had he examined the list of articles in the proof which he signed. In view of the length of the list of articles, the necessity for him to rely upon his wife and attorney in the main, and the fact that the actual loss on the personal property, exclusive of these three items, was more than double the amount of insurance we think that there was a jury question, and we cannot say as a matter of law that the plaintiff or his wife acted fraudulently. See *Hanscom* v. *Home Ins. Co.,* 90 Me 333, 38 A 324, 330, 331, for a somewhat analogous situation.

In its brief in support of the foregoing ground of its motions the defendant now stresses the excessive valuation of other articles and that the plaintiff never owned the piano. These matters were not mentioned in the motions and need not be discussed.

The second ground of the defendant's motions is that the policy was avoided because of the use to which the building was put. The coverage reads "while used for summer or seasonal dwelling purposes only," and it is insisted that the use for the three parties for which compensation was paid was a breach thereof. It appeared that the rate for dwelling purposes was less than for inn purposes, and that if in fact used as an inn the hazard was increased.

■ On the evidence there is no difference from the ordinary case of a building that had always been a private home except that

on three occasions during a given year the owner suffered a third party for compensation to have parties there. Because the building had been run as an inn did not prevent its being used for private dwelling purposes, and plaintiff's evidence tended to show that it was so used during the term of the policy up to the time of the fire except possibly in the case of the parties. If such use was a breach of the coverage provision it was an increase of hazard. As the fire did not occur during a period when the building was used for a party the policy was not avoided under the terms of the breach of conditions clause, which reads: "This policy shall not be invalidated by a breach of conditions relating to other insurance; increase of hazard; employment of mechanics; use or storage of hazardous articles and substances; extra time operation; cessation of operation; vacancy and unoccupancy; unless such breach shall exist at the time of the loss or damage, and any invalidating condition in this policy relating to chattel mortgage shall apply only if a chattel mortgage exists at the time of the loss or damage." This provision of the policy merely means that during such a breach the insurance is suspended, and after the breach it is revived. See *Beecher* v. *Vermont Mut. Fire Ins. Co.,* 90 Vt 347, 98 A 917.

The third ground of the motion for a directed verdict is "that the proof of loss as originally submitted was returned March 15, 1943, in accordance with the provisions of P. L. 6986, and no additional proof has ever been furnished as provided in said statute, and it now appearing that there has been an overstatement of the loss this suit is premature and cannot be maintained."

P. L. 6986 reads:

"A fire insurance policy shall not be void by reason of failure to make and deliver a proof of loss to the insurer, until the insurer notifies the insured in writing to make and deliver proof of loss in accordance with the terms of the policy and the insured fails to make and deliver such proof of loss within thirty days from the time of receiving such notice, and an omission or defect in such proof of loss shall not render the policy void or constitute a defense to an action thereon, unless the insurer notifies the insured thereof in writing within ten days after receiving such proof of loss, particularly specifying in such

notice all the omissions and defects in such proof of loss and the' insured neglects for thirty days after receiving such notice to make and deliver a new proof of loss wherein such omissions and defects are corrected."

Within the time limited the defendant notified the plaintiff that the proof of loss was defective and unacceptable because "the amount of loss sustained is over-stated," and requested that a new proof of loss be furnished with such defect corrected. No new proof was furnished.

■ The object of a proof of loss is to furnish the insurer with the particulars of the loss and all data necessary to determine its liability and the amount thereof, 26 CJ 376. If overstatement is a defect within the meaning of the statute the fault is here too generally stated to merit attention under the circumstances. The proof lists separately the values of the building and of a great many articles of personal property, and the evidence substantially sustains these values except for the three items wrongfully included. The statute requires that the defect shall be particularly specified. To have been of any avail the notice should have specified the particular item or items claimed to have been overstated.

Error is not made to appear.

*Judgment affirmed.*