## J. Leonard Smith, et al v. Samuel J. DeMetre

[118 A2d 346]

February Term, 1955.

Present: **Cleary, Adams, Chase and Hulburd, JJ., and Sylvester, Supr. J.**

Opinion Filed November 1, 1955.

*Witters, Longmoore & Akley* for the defendant.

*Richardson & Caldbeck* and *Kyle T. Brown, Jr.* for the plaintiff.

**Adams, J.** This is an action of tort based upon alleged false and fraudulent representations in the sale of real estate and personal property and also in the lease of a restaurant and its equipment to the plaintiffs by the defendant. The declaration is in two counts. The first count alleges false fraudulent representations pertaining to the equipment and condition of the restaurant. The second count alleges false and fraudulent representations pertaining to cabin court real estate, its equipment, water supply and operational profit.

Trial was by jury with a verdict and judgment for the plaintiffs on count two. The case is here on exceptions of the defendant to the admission of evidence, to the charge to the jury and to the denial of his motions for a directed verdict and to set aside the verdict. We first consider the motion for a directed verdict.

Viewing the evidence in the light most favorable to the plaintiffs, as it must be, the jury acting reasonably could have found the following facts,—The defendant was the owner of certain tourist cabins including about five acres of land and equipment located on U. S. Route 2 in the town of Lunenburg. On June 17, 1950, he listed this property with the Strout Realty Agency for sale. This was done through its agent at Gorham, N. H., Chester H. Elkins. From information furnished to Elkins by the defendant, a listing agreement (Plaintiffs' Ex. 8-b) was made that day by Elkins and signed by the defendant. The defendant when specifically inquired of by Elkins about the water supply informed him there was a "deep well, abundant supply of water" and also informed Elkins among other matters about the property, "year's profit, $4750." The listing agreement among other items of description specified "a pump house, a well house, deep well on property, year's profit $4750. all cabin furniture, furnishings and equipment, good quality, all coil spring mattresses complete." An original of the listing agreement was sent by Elkins to the Strout New York office. A prospectus (Plaintiffs' Exhibit 6)

was prepared from it and included in advertising sent out by the company. This included among other items of description the price of $16,500; "reported profit of $4750. last year, * * * all furnishings, furniture and equipment of good quality, * * * everything in good condition, * * * well house." A prospectus came to the attention of the plaintiffs in New Jersey where they lived in the summer of 1951. It came by mail from the Strout company. They then corresponded with Elkins and learned that the price had been raised to $18,000.

The plaintiffs came to Lunenburg the latter part of September and were taken to the property by Elkins, introduced to the defendant by Elkins as prospective purchasers and shown the property by Elkins. The plaintiffs returned to the cabin property with Elkins on October 6th. At that time the defendant claimed that he did not desire to sell and raised the price to $19,500., stating the reason for so doing that he had started two additional cabins. He finally told Elkins to show the plaintiffs around and Elkins did so. The plaintiff, Mr. Smith asked Elkins where the water supply came from and Elkins then showed him the pump house and well.

On that date a purchase and sale agreement between the defendant, his wife, and the plaintiffs was executed. This agreement had an accompanying inventory of the furnishings, furniture and equipment. The plaintiffs paid the defendant $500. at that time. One of the factors that induced the plaintiffs to buy the property was the representation in regard to the water supply.

In March 1952 the plaintiffs and the defendant met in St. Johnsbury with their respective attorneys. The plaintiffs then received a deed and bill of sale of the property, paid part of the purchase price and executed a note and mortgage securing it to the defendant for the balance. At that time the plaintiffs also leased the restaurant property from the defendant.

The plaintiffs took possession of the property in May. They soon discovered that only the drinking water came from the deep well and that all the water for washing, showers and toilets was pumped from the Connecticut river, that one of

the mattresses had a large hole in it stuffed with rags and paper and covered over, that several were badly soiled and several others had been patched with ticking and that fifteen or twenty sheets were in shreds. The fair value of the property in October 1951 if it had been as represented was what the plaintiff paid for it, $19,500., but it was only worth from $11,000. to $12,000.

The defendant's motion for a directed verdict was predicated in substance upon grounds among others that we take from his brief as relied upon by him; that there was no competent evidence of any fraud or misrepresentation on the part of the defendant; there was no competent evidence of any untrue statement or representation made by the agent acting within the scope of his authority upon which a verdict for damages could be predicated; there was no representation either in the listing agreement or in plaintiff's exhibit 6 that there was a never failing water supply suitable for all purposes; that the plaintiffs were bound to know the limitations of the agent's authority and that as a matter of law they dealt with him at their peril if he exceeded his authority and that the contract finally made in reliance upon statements and acts not within the scope of the agent's authority as limited by plaintiffs' exhibit 8-b is void as to the defendant.

█ █ The defendant took many exceptions to evidence received over his objection but he has briefed only 14 of them. Those not briefed are waived. *Strout* v. *Wooster*, 118 Vt 66, 71, 99 A2d 689. Inadmissible testimony received under objection is not for consideration in passing upon a motion for a directed verdict. *In re Peters Estate*, 116 Vt 32, 39, 69 A2d 281. If there was other evidence sufficient to take the case to the jury it is not necessary that we consider the evidence so objected to and briefed on the exceptions thereto in passing upon the motion here. We have, therefore, in our statement of the facts that the jury could find eliminated all the admitted evidence to which the defendant has briefed an exception.

The defendant claims in his brief that all the evidence of any misrepresentation as to the water supply made by the defendant is in the listing agreement that he signed, wherein it states in answer to the question, "Water supply?", "Deep

well on property." He ignores testimony of Elkins that when he was listing the property, the defendant when asked about the water supply replied, "Deep well, abundant supply of water." Certainly it could be inferred from this statement that the abundant supply of water came from that well. It could also be inferred that the defendant knew it was false as he testified he had always pumped water from the river. When Elkins showed the property to the plaintiffs and was asked where the water supply came from and as a reply showed the plaintiff, Mr. Smith, the pump house and well, a fair inference would be that the well was the only supply. Elkins certainly had authority in showing the plaintiffs the property to state what the defendant had told him about the water supply or use the method that he adopted by showing the well and pump house and let the plaintiffs draw their own inference.

■ If the representations are made by the broker with the express sanction of the principal, there is, of course, no reason for not holding the principal liable therefor. 8 Am Jur, Brokers, §64, p. 1021. To the same effect see 12 CJS, Brokers, §136, p. 346, note 51.

■ The evidence here was sufficient to take the case to the jury in regard to the water supply. It satisfies our expression that the evidence must fairly and reasonably tend to establish the essential facts of the plaintiff's claim to entitle him to go to the jury. That is, there must be evidence of such a quality and character as to justify a jury, acting reasonably, to predicate a verdict thereon in favor of the party having the burden of proof, *Wellman, Admr.* v. *Wales*, 98 Vt 437, 448, 129 A 317, or substantial evidence as distinguished from that based upon speculation and conjecture. *Reynolds* v. *John Hancock Life Ins. Co.*, 117 Vt 541, 545, 97 A2d 121. There was no error in denying the motion for a directed verdict in connection with fraud and misrepresentation in regard to the water supply. We need not consider other grounds of the motion.

The defendant took several exceptions to the charge to the jury. The court instructed the jury that "the defendant is liable in this case, for any and all acts and representations made by the broker, Mr. Elkins." The defendant excepted

to this upon the ground that it was unqualified and made the defendant liable for all representations and acts of Elkins and not those done within the scope of his authority as fixed by the listing agreement. Also upon the ground that the defendant cannot be held liable for a false statement made by the agent, Elkins, unless the defendant knew of the statement being made and it was untrue. This exception must be sustained.

The listing agreement was made in June 1950 on information furnished by the defendant and it was then signed by him. It was stated therein, "year's profits, $4750." Nowhere is it pointed out to us nor do we find where the defendant made any other representation in regard to profits. In the prospectus that came to the attention of the plaintiffs in the summer of 1951 by mail from the Agency it is stated, "Reported profit of $4750. last year." That could apply only to the year 1950 and would be so understood by the plaintiffs. The listing agreement gave neither Elkins nor the Agency any authority to quote a profit figure for 1950, nor did the defendant do so when he told Elkins in October 1951 to show the plaintiffs around. In fact the plaintiffs rely only upon the representation in the prospectus for this element of their case.

No representation is fraudulent at law, unless made with actual knowledge of its falsity or under such circumstances that the law must necessarily impute such knowledge to the party at the time he makes it, and the law raises no presumption of knowledge from the mere fact that the representation was false. *Jarvis* v. *Burlington Fire Ins. Co.*, 113 Vt 518, 522, 37 A2d 374, and cases cited. The better view is that one who employs an agent to sell land is responsible for the representations made by the agent to effect a sale where such representations are within the apparent scope of his authority. 8 Am Jur, Brokers, §64, p. 1020, note 20. In the absence of express authority, however, the principal is not liable or responsible without limitation for misrepresentation not within the ordinary scope of the broker's employment. 12 CJS, Brokers, §136, p. 343, note 26, also p. 345, note 45; Anno. 57 ALR 111.

The element of profit from a business is particularly within the knowledge of the owner or proprietor. The ap-

parent or ordinary scope of the authority of Elkins or the Agency did not include, without limitation, fraud as a matter of law based upon the representation in regard to profits here relied upon.

The defendant excepted to the charge in regard to the submission to the jury of misrepresentation about the water supply. This is covered by what we have said in regard to a directed verdict upon that ground. The exception in regard to the submission to the jury of the matter of damages without evidence of the value of the personal property separate from that of the real estate needs no attention as it is not likely to occur in that form again. We call attention, however, in passing, to the fact that the property, both real estate and equipment, was sold for one stated price. Its actual value and value if as represented need not be separated and such value either together or separate was for consideration of the jury on the question of damages.

Since a new trial must be had, we deem it expedient to discuss the exceptions to the evidence that are briefed, although some of them are inadequately briefed.

The first exception has to do with the form of a question asked the defendant by an attorney for the plaintiffs. It is not necessary to repeat the question here. It has to do with the memory of the defendant. The attorney was perhaps overly zealous in pressing the defendant for figures in regard to his business and profits. The question without doubt will not be repeated.

The second exception is in regard to allowing the following question to be answered, "Did Mr. DeMetre and Mr. Elkins have a dispute as to the amount of the commission?" (Referring to the time when the deed and other papers were executed in March 1952 at St. Johnsbury.) Whether or not there was such a dispute had no materiality to any issue in the case. However, without objection both the defendant and Mr. Smith had testified to a dispute about the commission that had taken place in October 1951, so error, if any, was harmless.

Exceptions 3, 6, 10, 11, 12 and parts of 5 and 9 have to do with questions pertaining to the water supply as not being

an issue in the case. We have stated heretofore that it was an issue and for the jury.

■■■ Exception 4 is to allowing a Mr. Osborne to testify as an expert as to the value of the property. The objection was that he was not qualified and that it was an abuse of the court's discretion to allow him to testify. The competency of a witness when offered as an expert is a preliminary question for the court to decide before receiving his testimony. Here the witness was examined and cross-examined as to his experience in selling real estate, knowledge of values and his familiarity with the property in question. The court then permitted him to testify. This was an implied finding of his competency. This ruling and finding is not revisable here unless it appears from the evidence to be erroneous or founded upon an error of law. We need not recite the evidence that appears in the transcript. An examination of it discloses evidence that supports the finding of competency. *Laferrierre* v. *Gray*, 104 Vt 366, 370, 160 A 270, and cases cited; *Purrington* v. *Newton*, 114 Vt 490, 493, 49 A2d 98; *Teitle* v. *London & Lancashire Insurance Co. Ltd.*, 116 Vt 228, 230-232, 73 A2d 300, and cases cited.

■■■ Exception 7 has to do with a witness comparing the business done by the plaintiffs in 1952 with that done by the defendant in 1950 by testifying as to whether or not there were more guest cars stopping in one year as compared with the other. This evidence was immaterial and not admissible. The amount of business done by comparing the number of cars stopping at tourist cabins under different owners or management in different years involves and depends upon too many different factors, such as type of weather, type of management, cleanliness, and surroundings, to mention only a few, to make it relevant and admissible. *Leblanc* v. *Deslandes*, 117 Vt 248, 252, 90 A2d 802. The same applies to exception 8 having to do with the testimony of Mrs. Smith as to net earnings for the year 1952. Furthermore in regard to her testimony any loss instead of profit was not an element of damage claimed by the plaintiffs.

Exceptions 13 and that part of 5 and 9 having to do with profit for 1950 are covered by what we have said in regard to the charge on that question.

Exception 14 has to do with testimony of Mrs. Smith in regard to how much the plaintiffs had spent on the property from their other earnings or funds in addition to what they had received from the cabin business. This evidence was immaterial to any issue in the case. The plaintiffs say in their brief that it was admissible because of previous questions asked the witness on behalf of the defendant. They cite or refer to no pages in the transcript where we may find them. We, therefore, have not searched for them. Supreme Court rule 8, §5.

Because of what we have said herein and our disposition of the case, it is unnecessary to consider the exception to the refusal of the court to grant the motion to set aside the verdict.

*Judgment reversed and cause remanded.*

Note. When this case was argued at the February Term 1955, it was assigned to Mr. Justice Chase. On September 16th, it was reassigned to Mr. Justice Adams.