## David J. Alexander v. Gerald E. Morrissey, Inc. and Ernest L. Erickson

[399 A.2d 503]

No. 52-78

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed February 6, 1979

Motion for Reargument Denied February 14, 1979. Defendant Morrissey's Motion for Reargument Denied February 21, 1979

*William C. Sennett*, Bennington, for Plaintiff.

*Robert E. Cummings, Jr.*, Bennington, for Gerald E. Morrissey, Inc.

*Barbara E. Cory* of *Dinse, Allen & Erdmann*, Burlington, for Erickson.

**Billings, J.** This is an action for breach of contract. Plaintiff-appellant Alexander, as owner, entered into a contract with defendant Ernest L. Erickson (Erickson) for architectural and supervisory services in connection with the construction of a fifty-bed nursing home in Bennington, Vermont. Plaintiff then contracted with defendant Gerald E. Morrissey, Inc. (Morrissey), a general contractor, for the materials and construction of the home. Several years after construction was completed, plaintiff Alexander brought an action in Bennington Superior Court, alleging that each defendant breached contractual duties in connection with the insulation and inspection of the roof-ceiling area of the home. The superior court dismissed the action against defendant Erickson on the ground that it was barred by the statute of limitations, and dismissed as to defendant Morrissey on the ground that a contractor is shielded from liability where he faithfully complies with an architect's defective plans or instructions. We reverse.

Plaintiff first entered into a contract with defendant Erickson on July 2, 1962. Alexander and Erickson executed a substantially similar contract under seal, on January 29, 1964, which expressly superseded and voided all prior agreements. Erickson's duties under this contract consisted of providing the necessary architectural, engineering, and consulting services, including the production of specifications and plans, and of supervising and inspecting the work. The agreement expressly provided that Erickson did not guarantee contractors' performance of their contracts. The agreement established both the owner's duty to pay for supplementary drawings necessitated by construction changes as agreed to by both parties, and the architect's duty to act in an advisory capacity in connection with any construction changes submitted by the owner. Nowhere in the contract was

authority given to the architect to effect construction changes unilaterally.

On November 21, 1963, plaintiff Alexander and defendant Morrissey entered into an agreement, under seal, whereby Morrissey would supply all materials and would construct the nursing home in accordance with architect Erickson's plans and specifications, which were incorporated in and made a part of the Alexander-Morrissey contract. The plans of architect Erickson specified for the ceiling area of the home six inches of fiberglass insulation with a foil vapor barrier on one side, having a thermal resistance of R-19. R-11 insulation was specified for the walls.

Contractor Morrissey sent a letter to Erickson under date of April 6, 1964, which read in full:

> The type of insulation encircled on the enclosed sheet is what we are planning to use for the nursing home, if it meets your approval. Please advise.

The type of material indicated was a double foil faced fiberglass of unspecified thickness, which turned out to be three inches. Arrows indicated that, while the thermal resistance for purposes of air-conditioning was R-19, that for heating purposes was only R-15. That is, the insulation value was different for heat flow up and heat flow down. The material indicated was significantly inferior for heating purposes than a material with an R-19 rating for both purposes.

Erickson returned the letter with the notation, "R19—ceilings; R-11 walls o.k." The material actually installed in the ceiling area was three inch double foil fiberglass which had a thermal resistance for heating purposes of only R-15.

Construction of the home was completed in September of 1964. During that month, plaintiff Alexander met with both defendants in the conference room of the institution financing the project and asked each one if everything was done the way it was supposed to have been done. Each responded in the affirmative.

There was no further communication between plaintiff and either defendant until sometime in 1968, when plaintiff complained to the defendants about his high heating bills at the nursing home. Plaintiff did not actually discover that the insulation in the ceiling was less than six inches thick until sometime between December, 1969, and December, 1970.

Action for breach of contract was commenced against contrac-

tor Morrissey by summons and complaint dated November 11, 1971, and served November 29, 1971. Architect Erickson was added as a defendant on July 26, 1974, the time at which he was served with a summons and amended complaint. Both defendants properly pleaded the statute of limitations in their answers.

▌ Neither defendant disputes the trial court's conclusion that plaintiff's action is governed as to each of them by 12 V.S.A. § 507, which provides that an action on a specialty shall be brought within eight years after the cause of action accrues, and not after. The rule in this jurisdiction is that a cause of action for breach of contract accrues when the breach occurs and not when it is discovered. *Anderson* v. *McKee*, 136 Vt. 623, 383 A.2d 273 (1978); *South Burlington School District* v. *Goodrich*, 135 Vt. 601, 382 A.2d 220 (1977). As construction was completed by September of 1964 and the action was not commenced against Erickson until July of 1974, plaintiff's action against the architect is barred unless the statute was tolled by operation of 12 V.S.A. § 555, which provides:

> When a person entitled to bring a personal action is prevented from so doing by the fraudulent concealment of the cause of such action by the person against whom it lies, the period prior to the discovery of such cause of action shall be excluded in determining the time limited for the commencement thereof.

As plaintiff commenced suit within four years of his discovery of his cause of action, this provision, if applicable, would render the action timely.

▌ Plaintiff has the burden of showing that § 555 applies, and must establish both a concealment and a fraudulent intent or design to prevent discovery of facts giving rise to his cause of action. Furthermore, he must show that the defendant had actual knowledge of a fact before the defendant can be charged with an intent or design to conceal it from the plaintiff. *Merrill* v. *Reville*, 135 Vt. 517, 380 A.2d 96 (1977); *Murray* v. *Allen*, 103 Vt. 373, 154 A. 678 (1931).

▌ In *Murray*, plaintiff brought suit against a surgeon after the applicable statute of limitations had run, alleging malpractice in that the surgeon had left a surgical gauze in plaintiff's abdomen in connection with an operation. Although the plaintiff experienced considerable difficulties following the operation and

came to defendant with them, the surgeon had assured her that "she was getting along just fine." The trial court directed a verdict in defendant's favor on the basis of the statute of limitations and plaintiff excepted, urging before this Court that the statute was tolled by the surgeon's fraudulent concealment. This Court held that since there was no evidence that the defendant surgeon had any actual knowledge of the presence of the gauze, he could have entertained no intent or design to conceal the fact of its presence from the plaintiff, no matter how negligent he may have been in failing to detect it. The actual knowledge required as an element of a fraudulent concealment that will toll the statute of limitations must therefore be distinguished from the scienter required as an element of the tort of fraudulent misrepresentation, where haphazard falsehood and intentional passing off of belief for knowledge are of the same effect as conscious misstatement of fact. See, e. g., *Smith* v. *DeMetre*, 119 Vt. 73, 118 A.2d 346 (1955); *Jervis* v. *Burlington Mutual Fire Insurance* Co., 113 Vt. 518, 37 A.2d 374 (1944).

In its findings of fact and conclusions of law supporting its order dismissing plaintiff's complaint against Erickson, the superior court noted that it was "persuaded that Defendant Erickson did not know at the completion of the project that an insulating product having a heat factor of less than R-19 had been installed." This conclusion cannot stand in light of other findings made by that court, to the effect that Erickson approved the use of an insulation that had an R-19 factor with respect to cooling but only R-15 with respect to heating. Although Erickson lacked the authority to unilaterally approve such a change, see *infra*, the findings are sufficient to show Erickson had knowledge of the fact that the insulation installed did not comply with the plans. This knowledge, coupled with Erickson's representation to plaintiff that the building was built as it was supposed to be, amount to fraudulent concealment of plaintiff's cause of action sufficient to toll the statute of limitations. The superior court's dismissal of Erickson was error.

Plaintiff's action against Morrissey, the contractor, is not time barred. Any contractual duty with respect to the ceiling insulation was breached, if at all, sometime subsequent to contractor Morrissey's proposal with respect to insulation material to architect Erickson in April of 1964. Plaintiff commenced this action against Morrissey in November of 1971, within the eight

year limitation period applicable to specialties. Appellee Morrissey relies for affirmance on the doctrine of *Fairman* v. *Ford*, 70 Vt. 111, 39 A. 748 (1897), to the effect that, absent an express warranty to produce a job free from defects, a contractor who faithfully follows plans or specifications supplied by the owner is not liable for loss or damage to the owner which results solely from defective or insufficient plans or specifications. Morrissey points to the superior court's finding, based on uncontroverted evidence, that the insulation was installed in a competent and workmanlike manner.

The problem with this argument is that Morrissey did not faithfully follow the plans, which called for six inch thick insulation with a thermal resistance of R-19. Plaintiff's injury arises in part out of Morrissey's errors in proposing and installing insulating material that did not conform to those plans. The plans were in no way defective or insufficient. Had contractor Morrissey insulated the nursing home in conformity with those plans, he would have been shielded from liability under the doctrine of *Fairman* v. *Ford, supra*, even if the demands of climate and construction made a thicker or different insulation necessary to keep heating bills within reason, but this he did not do.

We thus hold that the contractor is precluded from relying on Vermont's shield doctrine by the limitation embodied in the requirement that plaintiff's damage arise solely from the defective plans or specifications. Morrissey's proposal of insulating material, utilizing the manufacturer's descriptive literature which showed the material to be insufficient to comply with the requirements established under his contract with Alexander, was such deviation as to preclude application of the doctrine.

 Nor can Morrissey rely on the architect Erickson's approval of the insulation material indicated and eventually installed as amending the plans. The superior court's finding that the correspondence between the defendants effected such an amendment is clearly erroneous. An architect has no general authority in the absence of a contractual provision to unilaterally alter plans or specifications. The contract not only failed to supply this authority, but its provisions negate any inference of such an authority. First is the owner's undertaking to pay for costs associated with construction changes "as agreed to by both parties." Next is the architect's undertaking to advise the owner concerning the acceptability of changes submitted by the owner. Last is a

provision subjecting any action or determination of either the architect or the owner to acceptance or rejection by the Federal Housing Administration and the mortgagee. Unilateral construction changes by either party were clearly not contemplated.

■ Morrissey finally points to a provision contained in the architect's specifications, which were made a part of the Alexander-Morrissey contract, reading as follows:

> The contractor shall give efficient supervision to the work, using his best skill and attention. He shall carefully study and compare all drawings, specifications, and other instructions and shall at once report to the Architect any error, inconsistency or omission which he may discover, but he shall not be liable to the Owner for any damage resulting from any errors or deficiencies in the contract documents, or other instructions by the Architect.

It is sufficient to say here that the owner's injury did not result solely from the architect's faulty instructions. Defendant Morrissey performed a major role in creating the misunderstanding that produced the erroneous instruction. Under his contract with Alexander, Morrissey had a duty to construct the home in accordance with the architect's plans and specifications. A fair reading of the provision quoted above from those specifications reveals that Morrissey undertook to study all the plans and specifications and to compare against them any instructions of the architect. The error causing plaintiff's damage was not the architect's alone. The clause is insufficient to shift all liability to the architect in these circumstances.

*Reversed and remanded.*