In re Allen R. PETERSON and Rita F. Peterson, Debtors.

Allen R. PETERSON and Rita F. Peterson, Plaintiffs,

v.

Rita M. COUSINEAU, Defendant.

Bankruptcy No. 87–267.
Adv. No. 88–0014.

United States Bankruptcy Court,
D. Vermont.

Sept. 16, 1988.

G. Glinka, Drew and Glinka, Lyndon Center, Vt., for plaintiffs (Petersons).

T.J. Wells, White River Junction, Vt., for defendant (Cousineau).

## MEMORANDUM DECISION DENYING MOTION TO DISMISS

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter[1] is before the Court on Cousineau's motion to dismiss for failure to state a claim under Rules of Practice and Procedure in Bankruptcy Rule 7012(b)(6).[2]

The Petersons are farmers who filed for relief in bankruptcy under Chapter 12, Title 11 of the U.S. Bankruptcy Code, 11 U.S.C. § 101, et seq., on November 17, 1987. This motion comes before the Court as parcel of an adversary proceeding.

We learn from the pleadings that the Petersons purchased their farm from Cousineau and a spouse, now deceased, on June 1, 1973. As consideration for the farm, the Petersons gave Cousineau a note for $135,-000.00 which is secured by a first mortgage. The note was allegedly unpaid when the Petersons filed their bankruptcy petition. Cousineau filed a proof of claim on February 12, 1988 for $73,349.54 in principal and $5,371.60 in interest due on this note, for a total of $78,721.14.

On March 9, 1988, the Petersons filed an objection to Cousineau's filed claim under 11 U.S.C. § 502 and under Rules of Practice and Procedure in Bankruptcy Rule 3007. The objection to claim was accompanied by an adversary proceeding complaint to disallow the claim and determine the validity of liens. The objection to claim and the adversary proceeding were consolidated for consideration by Rules of Prac-

tice and Procedure in Bankruptcy Rule 7042.

The Petersons' complaint set forth nine separate causes of action. Three causes of action claim fraud in the 1973 sale of the farm by Cousineau and her spouse to the Petersons. Five causes of action arise out of the circumstances, negotiations, and an October 1985 agreement which altered the terms of the original mortgage note. Lastly, there is a claim for intentional infliction of emotional distress arising out of the negotiations and signing of the October 1985 agreement.

Cousineau filed an answer denying each cause of action, a list of affirmative defenses, and a motion to dismiss. In the motion to dismiss Cousineau specifically challenges two of the Petersons' causes of action.

In weighing a motion to dismiss, a Court will accept as true the facts as plead by the non-moving party. *Fine v. New York*, 529 F.2d 70 (2d Cir.1975), on remand 71 F.R.D. 374 (S.D.N.Y.1976). With this rule of law in mind we accept the Petersons' version of the pertinent facts as true.

According to the Petersons' complaint, a series of events in 1985 led to an agreement altering the terms of the June 1, 1973 mortgage note. On August 7, 1984, a fire destroyed the barn and cattle on the Petersons' farm. The barn was insured and the insurer commenced an interpleader action in Federal District Court for the State of Vermont[3] naming Cousineau, among others, as a defendant. Although the Petersons were not in arrears on the June 1, 1973 note for more than thirty days, Cousineau declared the note in default. The

---

1. We have jurisdiction to hear this matter under 28 U.S.C. § 1334(b) and the reference to this Court under Vermont Local Bankruptcy Rule 7012. This proceeding is a core matter under 28 U.S.C. § 157(b)(2)(B) and (K). This Memorandum Decision shall constitute findings of fact and conclusions of law under Rules of Practice and Procedure in Bankruptcy Rule 7052 which makes F.R.Civ.P. 52 applicable to bankruptcy proceedings.

2. Rules of Practice and Procedure in Bankruptcy Rule 7012(b) provides in pertinent part: "Rule 12(b)-(h) F.R.Civ.P. applies in adversary

proceedings." Rule 12(b)(6) provides in pertinent part:

(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion ... (6) failure to state a claim upon which relief can be granted ...

3. *Agway Ins. Co. v. Peterson, et al.*, Docket No. 84–338 (D.C.Vt.1984).

Petersons further allege that Cousineau unlawfully threatened foreclosure proceedings and refused to accept the Petersons' timely offer of payment under the note. On September 25, 1985, Allen Peterson was injured in a farm accident. Shortly after this event, the interpleader action was settled by stipulation of the parties. The October 1985 agreement between the Petersons and Cousineau followed.

Cousineau disputes the allegation that the note was not in default and that she unlawfully threatened foreclosure. For the purposes of this motion we do not decide the factual disputes among the parties.

The Petersons allege five causes of action regarding the October 1985 agreement: the agreement lacked consideration; Cousineau breached a covenant of good faith and fair dealing; the Petersons en-

tered into the agreement under economic duress; the agreement calls for prepaid interest in violation of Vermont law; and, the agreement was unconscionable.[4] The agreement was executed on October 30, 1985. The agreement altered the terms of the 1973 note. It provided that Cousineau be paid $45,000.00. The funds were applied to outstanding principle as well as interest purportedly in arrears. An additional $16,960.84 was designated by Cousineau as prepaid interest. Under this agreement, the Petersons were to continue bi-monthly payments in the same amount as under the original note, but interest was changed from six (6%) percent to eleven (11%) percent.

Cousineau challenges the Petersons' claim that a breach of good faith and fair dealing occurred in negotiations for the October 1985 agreement. Cousineau as-

---

**4.** The relevant parts of the Petersons' complaint provide:

> 15. On October 20, 1985, shortly after Allen Peterson had been released from the hospital, the defendant required the Petersons to sign an agreement (Exhibit 'C'), prepared by the defendant's counsel, providing that part of the insurance proceeds from the fire be applied to pre-paid principal, part to interest purportedly in arrears, and the remaining $16,960.84 to pre-paid interest on future installments toward the remaining balance on the original mortgage note, and further providing for an increase in the annual rate of interest from six (6) per cent to eleven (11) per cent on these installments toward the remaining balance.
>
>    *     *     *     *     *     *
>
> Fraudulent Misrepresentation
>
> 18. By knowingly misrepresenting that there was sufficient potable water on the property, that the cattle were free of mastitis, and that their milk production was adequate, inducing plaintiffs Allen Peterson and Rita Peterson to purchase the farm property that allegedly secures defendant's claim, the defendant and her husband defrauded the Petersons.
>
>    *     *     *     *     *     *
>
> Negligent Misrepresentation
>
> 20. In the alternative, by negligently misrepresenting that there was sufficient potable water on the property, that the cattle were free of mastitis, and that their milk production was adequate, inducing plaintiffs Allen Peterson and Rita Peterson to purchase the farm property, the defendant failed to exercise reasonable care in ascertaining the facts on which the Petersons relied in purchasing the farm.

>    *     *     *     *     *     *
>
> Negative Deceit
>
> 22. In the alternative, the defendant and her husband, based on their superior knowledge, had a duty to disclose to the plaintiffs that there was insufficient potable water on the property, that the cattle suffered from mastitis, and that their milk production was inadequate.
>
>    *     *     *     *     *     *
>
> Illegality
>
> 24. In applying the remainder of a lump-sum payment of insurance proceeds to pre-paid interest rather than to the outstanding principal, as described in Paragraphs 15 through 17 of this Complaint, the defendant knowingly violated 9 V.S.A. 41a, which provides that interest shall not be paid, deducted, or added to principal in advance.
>
>    *     *     *     *     *     *
>
> Breach of Covenant of Good Faith and Fair Dealing
>
> 28. The plaintiff's (sic) unlawful declaration of a default on the original mortgage note dated June 1, 1973, the terms of the agreement dated October 30, 1985, the compelled prepayment of principal and payment of interest purportedly in arrears, the application of a lump-sum payment toward pre-paid interest, the increase in the rate of interest from six (6) per cent to eleven (11) per cent, and the subsequent demands for payment of the claimed amount, constitute a breach of the defendant's covenant of good faith and fair dealing with plaintiffs Allen Peterson and Rita Peterson.

serts that Vermont law does not recognize an implied covenant of good faith and fair dealing outside the Uniform Commercial Code. The agreement concerns a note taken in the sale of real property secured by a mortgage on real property. Transactions concerning real property are not covered by the Uniform Commercial Code. 9A Vt. Stat.Ann. 9–104.[5]

It is clear that this Court can entertain a cause of action based on a legal theory which Vermont State law has yet to address. In *In re STN Enterprises*, 779 F.2d 901 (2d.Cir.1985), the Second Circuit Court of Appeals reversed the District Court's dismissal of a cause of action concerning whether a corporate director of an insolvent corporation owes a fiduciary duty to the corporation's creditors. Although there is no substantial Vermont law on the issue, the Second Circuit noted that many other States do recognize the existence of such a fiduciary duty by corporate directors. The Court of Appeals, on remand in *In re STN Enterprises, Inc., id.*, held that it was premature to determine what the State law would be for dismissal purposes and indicated that the facts needed to be more fully developed. Accord, *Assoc. Haystack Property Owners v. Spraque*, 145 Vt. 443, 494 A.2d 122 (1985) (Vermont Supreme Court reversed and remanded a trial court's order granting a Rule 12(b)(6) motion against corporate creditors novel cause of action for breach of fiduciary duty against the corporate directors); See also, *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (D.C.Cir.1984) (a complaint must contain "sufficient information to suggest that there is some recognized legal theory upon which relief can be granted." *Id.* at 1078).

In view of this ruling by our Court of Appeals directing the development of facts to support novel theories of recovery, Cousineau's motion must fail. Though the Petersons' claim of breach of good faith and fair dealing in business transactions ap-pears to be a novel cause of action in Vermont, we are not prepared at this early stage of the litigation to declare it dead. There is little doubt in our mind that a duty of good faith and fair dealing is a recognized legal concept. The Restatement (Second) of Contracts recognizes that parties to a contract have a duty of good faith and fair dealing in its performance. Restatement (Second) of Contracts 205 (1981). Courts have recognized this cause of action. See e.g., *Filner v. Shapiro*, 633 F.2d 139, 143 (2d.Cir.1980) ("In every contract there is an implied covenant of good faith and fair dealing which precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement.") Although the Vermont Supreme Court has not ruled on the issue, we think they would follow the Restatement position and the *Shapiro* holding, supra. Accordingly, we believe this is a viable concept which we should entertain, subject, of course, to proper proof. The facts as alleged by the Petersons, on their face, indicate the Petersons have stated a cause of action.

■ The next matter to consider is Cousineau's contention that the claims of fraud resulting from the negotiations that led to the purchase of the farm in 1973 are barred by various statutes of limitations. The complaint voices that during negotiations to purchase the farm, Cousineau and her spouse "expressly represented" or "induced" the Petersons to believe three facts on which they relied for the purchase of the farm. First, that there was sufficient potable water available to the farm. Second, that the cattle to be sold with the farm were in good health, with adequate milk production, and that the cattle were free of mastitis.[6] Finally, that Cousineau provided breeding charts which concealed the fact that many of the cattle had not been properly bred. The improper breeding caused reduced milk production. The Petersons assert that they relied on these representa-

---

**5.** 9A Vt.Stat.Ann. 9–104 provides: This article does not apply ... (j) ... to the creation or transfer of an interest in or lien on real estate, including a lease or rents there under....

**6.** Webster's Dictionary defines mastitis as the "inflammation of the breast or udder usually caused by infection."

tions to their detriment in deciding to purchase the farm. Some time after the purchase of the farm the Petersons claim that there was not sufficient water, the cattle had mastitis, and the cattle had not been properly bred. The complaint fails to allege when the Petersons discovered the alleged fraud.

Cousineau could have made a request for a more definite statement to find out when the Petersons claim to have discovered the fraud. Rules of Practice and Procedure in Bankruptcy Rule 7012(e). This fact would be helpful in determining when the applicable statute of limitations began to accrue. Vermont's general statute of limitations provides: "A civil action ... shall be commenced within six years after the cause of action accrues and not thereafter." 12 Vt. Stat.Ann. 511 (1973). As a general rule a cause of action accrues when the act upon which the legal action is based took place, not when the act is discovered. *Alexander v. Gerald E. Morrissey, Inc.*, 137 Vt. 20, 399 A.2d 503 (1979) (action for breach of contract); *South Burlington School District v. Goodrich*, 135 Vt. 601, 382 A.2d 220 (1977) (same). When there is fraudulent concealment of the cause of action "the period prior to the discovery of such cause of action shall be excluded in determining the time limited for the commencement thereof." 12 Vt.Stat.Ann. 555. The burden would be on the Petersons to show that there was fraudulent concealment preventing discovery of the facts giving rise to this cause of action. *Alexander*, 137 Vt. at 24, 399 A.2d at 505. The Petersons have made no allegations that there was any delay in the discovery of the alleged fraud, and this would be enough to defeat the Petersons on this issue. But, because the Petersons argue that even if the statute of limitations has run they may bring their claim as one of recoupment, this Court considers the missing information unnecessary to the disposition of this motion.

The Petersons claim their facts support three causes of action resulting from the 1973 transaction: fraudulent misrepresentation; negligent misrepresentation; and, negative deceit (as an alternative to fraud the Petersons allege that Cousineau had an affirmative duty to disclose information because of superior knowledge). Cousineau says that the claims arising from the events connected with the sale of the farm in 1973 are barred by a statute of limitations.[7]

Most Courts hold that statute of limitations are properly raised by a motion to dismiss. See e.g., *Gordon v. National Youth Work Alliance*, 675 F.2d 356 (D.C. Cir.1982). The complaint must show on its face that relief is barred by the statute of limitations. *Wycoff v. Menke*, 773 F.2d 983 (8th Cir.1985).

The defendant directs the Court's attention to the four year statute of limitations in the Uniform Commercial Code as adopted by Vermont. 9A Vt.Stat.Ann. 2-725. Cousineau says the sale of cattle is covered by the UCC. *Aube v. O'Brien*, 140 Vt. 1, 433 A.2d 298 (1981). Therefore any action based on misrepresentations regarding the cattle is barred after four years. In addition, any claims arising from the sale of the farm or the cattle would be barred in six years under from the date the action accrued. 12 Vt.Stat.Ann. 511.

The Petersons counter that the limitation on claims is applicable because their claims are brought as recoupment. The Vermont statutes provide:

> A cross-claim or counterclaim shall not be brought if an independent action upon the same claim would have been barred under the provisions of this chapter at the time of commencement of the plaintiff's action, except that a counterclaim arising out of the transaction or occurrence that is the subject matter of plaintiff's claim shall be allowed, to the extent of plaintiff's demand, at any time.

12 Vt.Stat.Ann. 463.

The facts as plead show that the claims of fraud arise out of the same transaction as that on which defendant filed her proof

7. As a general rule the applicable statute of limitations for deciding whether a state law claim is barred is provided by State law. See generally, *Moore's Federal Practice*, Vol. 2, 3.08[1] (2 Ed.1988).

of claim. The Petersons' action is in the nature of a counterclaim sufficient to bring it within the realm of section 463 because Cousineau filed a proof of claim. When a debtor objects to a proof of claim and joins a claim with the objection that claim becomes an adversary proceeding. Rules of Bankruptcy Practice and Procedure Rule 3007. The Petersons' claim is in response to a proof of claim, therefore, it is in the nature of a counterclaim. This characterization of the debtor's claim as a counterclaim when joined to the objection to creditor's claim is considered in the Advisory Committee note to Rule 3007 which states:

> The contested matter initiated by an abjection to a claim is governed by Rule 9014, unless a *counterclaim* by the trustee is joined with the objection to the claim. The filing of a *counterclaim* ordinarily commences an adversary proceeding subject to the rules in Part VII. is characterized as a counterclaim.

*Advisory Committee Note* (1983). See, *In the Matter of Highland Sportswear, Inc.,* 18 C.B.C. 536 (Bkrtcy.S.D.N.Y.1978) (where debtor objected to a claim and sought affirmative relief against creditor the debtor's claim was characterized as a counterclaim).

■ Cousineau, in a memorandum in support of the motion to dismiss, objects to the Petersons' claim that the October 1985 agreement illegally called for prepaid interest. Cousineau says that the Petersons' assertion that Cousineau violated 9 Vt.Stat. Ann. 41a (1984)[8] is not specific enough to state a cause of action. The statute provides that "[i]nterest shall not be paid, deducted or added to principal in advance." 9 Vt.Stat.Ann. 41a(d)(1) (1984). The language of the statute is clear. The Petersons' complaint incorporated the October 1985 agreement in question which explicitly designates $16,960.84 as prepaid interest.[9] There is no doubt that this claim is well plead and tenable.

■ Besides the specific objections to the Petersons' complaint made by Cousineau in her motion to dismiss and supporting memorandum, the Court is aware that paragraph #3 of Cousineau's affirmative defenses generally states that there has been a failure to state a claim upon which relief can be granted.

The Court questions whether it must examine each of the remaining causes of action brought by the Petersons to determine if they fail to state a claim upon which relief can be granted when faced with a general statement made as part of a laundry list of affirmative defenses. Generally, dismissal for failure to state a claim upon which relief can be granted is disfavored by the Courts. *Moore's Federal Practice,* Vol. 2A, 12.07[2–5] (2 Ed.1987). With this in mind, we refrain from making further Rule 12(b)(6) rulings on the remaining causes of action unless there is a specific motion made by Cousineau. See, F.R.Civ. P. Rules 12(b), 12(h)(2), and 7(b).

For the reasons outlined above Cousineau's motion to dismiss is denied.

---

**8.** The relevant portion of 9 Vt.Stat.Ann. 41a(d) provides: (d) actuarial method
  (1) Unless otherwise specifically provided by law, all interest on closed-end accounts, loans or extensions of credit charged under this or any section shall be computed only on the outstanding balance subject to finance charge by the actuarial method of calculation. On all closed-end accounts, loans of extensions of credit, interest shall be based on a 365–day year and on a 366–day year during a leap year, except in the case of loans secured by residential properties of to finance income producing business or activity where a 30–day 360–day year interest calculation may be used. Interest shall not be paid, deducted or added to principal in advance. (Emphasis ours).

**9.** For F.R.Civ.P. Rule 12(b)(6) purposes, we consider the October 1985 agreement as attached and incorporated within the Peterson's pleadings and not matter outside the pleadings which would otherwise transform this 12(b)(6) motion into a F.R.Civ.P. Rule 56 Summary Judgment motion. *Goldman v. Belden,* 754 F.2d 1059 (2d. Cir.1985).