In Re Shelburne Supermarket, No. S0065-03 Cncv (Katz, J., June 28, 2004)


[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]


STATE OF VERMONT

Chittenden County, ss.:


IN RE: SHELBURNE SUPERMARKET


ENTRY

(Motion to Dismiss)


     This case arises from a dispute between parents Harry and Lucille Clayton and their son, Steven.  Both parents and son are shareholders in the Shelburne Supermarket, a closely held corporation.  In 1987 Steven and Harry made an arrangement to return Steven's shares in Shelburne Supermarket to his father pending Steven's divorce.  This transfer, intended

to be temporary, became something else when Harry refused to reconvey the shares back to Steven.  This in turn spilled over into the business where Harry and Lucille and Steven stalemated over on-going management issues.  At the behest of the corporation's counsel, the parties agreed to arbitrate their stock ownership dispute, which resulted in a decision in Steven's favor.  Harry and Lucille have already challenged this decision, which we have already upheld.  While the validity of that arbitration and its result is no longer at issue, Steven has, in the meantime,  filed a Statement of Claim seeking to recover dividends that his parents received during the 1987–2002 period when they had possession of the stock shares.  Harry and Lucille have responded with a motion to dismiss these claims on two alternative theories of res judicata and statute of limitations.

Under the theory of res judicata, Harry and Lucille argue that Steven's present claims for dividends are improper because they would split his indivisible cause of action, namely his assertion of ownership, in arbitration.  They argue that Steven should have presented his claim for past dividends at the arbitration and that by failing to do so he is barred from raising them now.  Harry and Lucille rely on two cases to support their position and emphasize a quotation about splitting causes of action from an 1851 decision by Judge Isaac Redfield.  B & E Corp. v. Bessery, 130 Vt. 597, 601 (1972) (quoting Parkhurst v. Sumner, 23 Vt. 528, 541 (1851) (Redfield, J.)); Sabourin v. Woish, 117 Vt. 94, 99–100 (1952).  Setting aside the factual distinctions of these cases and the fact that they involved litigation where there had been prior judicial adjudications, Harry and Lucille's arguments mischaracterize the nature and limits of arbitration and this arbitration in particular.

Arbitration is a creature of contract.  See, e.g., R. E. Bean Const. Co. v. Middlebury Assocs., 139 Vt. 200, 208–09 (1980) (discussing the issues

parties agreed by contract to submit to arbitration). It allows parties, through an agreement, to arbitrate some parts of their dispute, while setting others aside. Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995). This can be done regardless of the legal implications, such as splitting a cause of action, that would have attached if the issue had been litigated. See id. In this case, Steven and his parents had reached an impasse over the issue of ownership and control of the corporation. This led to a deadlock over critical business decisions and began to threaten the corporation. At the behest of the corporation's attorney, Harry, Lucille, and Steven agreed to arbitrate the ownership issue so that corporate decisions could once more be made. As the first stage of this litigation showed, this agreement was not easy to arrange. Harry and Lucille were quite wary of submitting their dispute to any type of adjudication and even attempted to wriggle out of arbitration after it had begun, before it was decided, and again after it had been decided. Indeed, once this court ruled the scope-of-arbitration issue adversely to them, Harry and Lucille attempted to appeal. (Joint Mot. to Transfer, at ex. 2, Jan. 17, 2003.) The only reasonable reading of the record is that Harry and Lucille were willing to accept the recommendation of the corporate counsel for the good of the ongoing business, but only as far as necessary.

The actions of both parties underscore this reasoning. No one at the arbitration either raised the issue of restitution or presented evidence on it. Furthermore, there is no mention of any restitution issues in the arbitrator's extensive decision. Instead, the only plausible conclusion is that there was never any expectation or agreement to place a restitution claim for return of past dividends on the arbitration table. Such a claim certainly involves hundreds of thousands of dollars, perhaps more than a million. The only shared goal between the parties was getting corporate governance off Point Zero. Payment of restitution, under all circumstances shown at trial, must

have been Steven's secondary issue, and Harry and Lucille's not at all.  We, therefore, decline to apply res judicata to Steven's claims for past dividends because the agreement to arbitrate did not include issue and, in fact, implicitly excluded it so that the pressing issue of the time, the question of ownership, could be resolved.

In the alternative, Harry and Lucille argue that if Steven's claims are not barred by res judicata, then they are covered by the statute of limitations.  12 V.S.A. § 511.  This, they argue, would limit Steven's claims to dividends paid out in the six years prior to the present case and would, by implication, dismiss any claims to dividends prior to that point.  In response Steven makes three arguments.  We will address each of them in turn.

Steven argues that the statute of limitations, 12 V.S.A. § 511, does not apply here because his claim for restitution is essentially one in equity, and the statute of limitations is reserved for claims at law.  As Steven notes, the statute of limitations has been rejected in previous cases based on the equitable nature of the proceeding, but it has only been rejected where the case was limited to equity alone.  See, e.g., Jones v. McGonigle, 37 S.W.2d 892 (Mo. 1931).  In contrast, there is a long-standing rule applying statutes of limitations to actions involving both equity and law.  Collard's Adm'r v. Tuttle, 4 Vt. 491, 492 (1832); see also Bailey v. Groton Mfg. Co., 113 Vt. 309, 311 (1943); Tharp v. Tharp, 15 Vt. 105, 108 (1843) (Redfield, J.) ("This being a bill in chancery to compel an account, in a case where a court of law has concurrent jurisdiction with courts of equity, if the claim is barred at law, it cannot be enforced in equity.  This is a uniform rule.").  In the present case, Steven has asserted eight different causes of action sounding in both law and equity.  While he bases his argument against the statute of limitations on his fifth claim of constructive trust, one sounding in equity, he is unclear why this claim should make the restitution sound in

equity to the exclusion of his legal claims, or whether the other claims sounding in law, including one for an accounting, should simply be dismissed. Neither line of reasoning will render his remedy in equity to the exclusion of 12 V.S.A. § 511. As Justice Collamer wrote:

> It is true that, in matters of account, generally, chancery has concurrent jurisdiction with the courts of law; and where the defendant is pursued in chancery, for an account in any capacity, in which he could be pursued at law, a bill will not be sustained where an action would not be.

Spear & Carlton v. Newell, 13 Vt. 288, 293 (1841). This is in essence the same rule enunciated in Tuttle, namely that the statute of limitations will apply where law and equity share jurisdiction. 4 Vt. at 492. Simply by claiming an equitable remedy, Steven's concurrent claims at law do not disappear or take a back seat so that the statute of limitations can be suspended. Such a principle would violate the purpose of the statute of limitations and create an arbitrary law/equity distinction, which would, in turn, encourage carefully crafted equity claims created solely as an end run.

Newell further illustrates what type of case sounds solely in equity and can therefore exclude the statute of limitations. In the case, the plaintiff sought an accounting for a partnership, but because the partnership was not filed under seal, and therefore not recognized at law, his only remedy was in equity. Newell, 13 Vt. at 292. The Court held that since it was a claim solely in equity, the statute of limitations did not apply. Id. at 293. Instead, the Court noted that a form of laches would apply since even "a court of chancery will not enforce a stale claim." Id. In contrast, Steven's claims and remedies arise from both equity and law. They simply cannot be split so that part are immune from the statute of limitations while the others are likewise barred. This would render the statute of limitations more of a

formal exercise than a substantive defense. Instead, we will adhere to the rule of concurrent jurisdiction from Tuttle and Newell and apply the statute of limitations to Steven's claims as law and equity clearly share jurisdiction.

Steven's next argument is that the statute of limitations was taken off the table by the parties in arbitration and by our October decision. This argument mistakes both the scope of the arbitration and the nature of our October decision. As we discussed above, the arbitration was limited to the issue of ownership. Likewise, the statute of limitations defense that was raised by Harry and Lucille at that time dealt with the issue of ownership. So by extension, our October decision was limited to that issue. Matzen Constr. Inc. v. Leander Anderson Corp., 152 Vt. 174, 177 (1989). Thus, Harry and Lucille are free to raise the statute of limitations as a new and separate defense to Steven's new and separate claims. Otherwise, they would be barred from asserting a defense before the claim was raised. We find little logic and less fairness in such a proposition. Therefore, we decline to preclude Harry and Lucille's current use of the statute of limitations defense.

In his final argument, Steven characterizes his claims for dividends as a right to an accounting. By doing so, he claims that his right to the dividends did not accrue until the arbitrator's award in 2002 when the arbitrator decided the entire transfer was invalid from the beginning. By invalidating the entire transfer, Steven argues, the arbitrator created a right to the dividends that would not have existed if he had simply ordered Harry and Lucille to return the stock shares in a new transfer. This line of reasoning, however, ignores the fact that Steven was aware as early as 1989 that his parents were unwilling to reconvey the stock shares to him. In

other words, he was aware of the injury and his parents' breach of their agreement.  Howard Bank v. Estate of Pope, 156 Vt. 537, 538 (1991); Alexander v. Gerald E. Morrissey, Inc., 137 Vt. 20, 24 (1979).  Thus, he could, at anytime after 1989, have brought suit against his parents seeking ownership and a return of any past dividends they had received.  Like the arbitrator in 2002, then, the court would have been able to rule the transfer invalid from the beginning and grant him a return of all dividends.  The fact that Steven waited until now to assert these claims does not change the date of their accrual.  The arbitrator did decide in Steven's favor, but by doing so, he did not create a new right for Steven or revive a stale one.  It is the same right of ownership Steven has had since 1987.

Stylizing this present action as an accounting does not alter the fundamental nature of Steven's claims, which existed alongside his asserted rights of ownership.  Harry and Lucille breached their duty when they failed to return the shares.  The source of this duty is not important.  They have raised the statute of limitations defense, and Steven's claims will be limited to dividends paid out in the six years prior to the present litigation.

In conformance with aforegoing, defendants Harry and Lucille Clayton's motion for dismissal is denied in part and granted in part.

Dated at Burlington, Vermont_____, 2004.

_____

Judge