**BRIGHAM YOUNG UNIVERSITY,**
**Plaintiff and Appellant,**

v.

**PAULSEN CONSTRUCTION COMPANY, Christiansen Brothers & Associates, Inc., and Wilcox, Beecher & Fetzer, Defendants and Respondents.**

No. 19638.

Supreme Court of Utah.

Oct. 27, 1987.

---

Eugene H. Bramhall, Hal Visick, and Pamela J. Park, Provo, for plaintiff and appellant.

Raymond M. Berry, Joy L. Sanders, Ken Roche, and James H. Faust, Salt Lake City, for defendants and respondents.

ZIMMERMAN, Justice:

This is an appeal from a judgment on the pleadings entered in favor of Paulsen Construction Company ("Paulsen") and Christiansen Brothers & Associates, Inc. ("Christiansen"), against Brigham Young University ("BYU"). The district court held that BYU's claims against the two construction contractors are barred because they were not brought within the three-year period of limitation imposed by section 78–12–26(1) of the Code. Before this Court, BYU contends that the six-year limitation period of section 78–12–23(2) should apply and that the statute did not begin to run on BYU's claims until after it discovered that the construction supervised by Paulsen and Christiansen was defective. We agree that the six-year statute applies. However, on the facts of this case, we decline to hold that the statute was tolled pending BYU's discovery of the defective construction. We reverse as to the claims against Christiansen and affirm as to the claims against Paulsen.

In 1973, BYU had plans prepared for a facility presently known as the Missionary Training Center. It was to be constructed in two separate phases. In July of 1974, BYU chose Paulsen to act as the general contractor for Phase I. That phase was completed on November 1, 1976. BYU then selected Christiansen to act as general contractor for Phase II, which was completed on October 31, 1978.

In July of 1978, BYU first discovered that underground pipes serving Phase I were leaking. By May of 1979, the leakage was so severe that BYU excavated and inspected the pipes of both phases. The hot water pipes were badly corroded and were replaced immediately.

BYU commenced this action on February 1, 1983. It alleged that the corrosion resulted from the negligent failure of Paulsen and Christiansen to perform their supervisory responsibilities under their contracts with BYU. Specifically, BYU

claimed that Paulsen and Christiansen negligently allowed subcontractors to install pipe insulation material that did not conform to the project construction specifications. BYU sought to recover the cost of replacing the pipes.

The defendants moved to dismiss, alleging that the statute of limitations had run on the claims. The district court held that the six-year limitation period of section 78–12–23(2), which applies to "action[s] upon any contract, obligation, or liability founded upon an instrument in writing," was not applicable. Utah Code Ann. § 78–12–23(2) (1977). Instead, the court found that BYU's claims fell within the operation of section 78–12–26's three-year limitation period, which applies to "action[s] for waste, or trespass upon or injury to real property." Utah Code Ann. § 78–12–26(1) (1977). Because BYU filed its action more than three years after each contractor had completed its work, BYU's action was barred.

■ In *Bracklein v. Realty Insurance Co.*, 95 Utah 490, 500, 80 P.2d 471, 476 (1938), this Court set forth the test for determining whether the six-year period of section 78–12–23(2) applies to a particular case: "[I]f the fact of liability arises or is assumed or imposed from the instrument itself, or its recitals, the liability is founded upon an instrument in writing." The present case appears to satisfy the *Bracklein* standard. BYU asserts liability based entirely on written instruments. It alleges that Paulsen and Christiansen "were each negligent in carrying out the supervisory

responsibilities as general contractors *as defined under their individual agreements*" by allowing subcontractors to install "an insulation substance materially different from the insulation *specified in the construction documents.*" Complaint at 4–5 (emphasis added). Absent the contractual obligations of Paulsen and Christiansen to BYU, the two contractors would have had no obligation to supervise construction of the Missionary Training Center. Only the alleged breach of their contractual duties gives BYU any basis for asserting that they are liable for the cost of replacing the pipes.[1] BYU's claims are, therefore, actions upon contracts founded on instruments in writing and, as such, clearly fall within the scope of the six-year period of limitation in section 78–12–23.

The district court, in rejecting this line of reasoning and holding that the three-year period of section 78–12–26(1) applied to BYU's claims, reasoned that even if BYU's cause of action arose out of a breach of contract, the harm suffered was an injury to property. The court then concluded that section 78–12–26(1) governs any action for harm to property, regardless of the legal theory underlying the action.

It is possible to arrive at the district court's conclusion from a literal reading of the language of section 78–12–26(1), which states that it applies to "[a]n action for ... injury to real property." However, a review of the historical development of section 78–12–26(1) indicates that it has always applied to actions grounded in tort,[2]

---

1. BYU's allegation that Paulsen and Christiansen "negligently" failed to perform their contractual duties adds nothing to their cause of action; it certainly does not serve to convert this case into a tort action. A negligent failure to perform contractual duties is a breach of contract, not a tort.

2. The basic language of section 78–12–26(1) has been in effect in Utah for over 100 years. *See* 1876 Compiled Laws of Utah, tit. XVIII, ch. 3, § 16. When the statute was first enacted, it applied to actions for "trespass upon real property." At common law, trespass covered a much broader spectrum of tortious conduct than it does currently. In the past, the term "trespass" not only applied to the intentional tort of trespass as we know it today, but also to other types of invasions of a property owner's

interests, i.e., intrusions resulting from negligent conduct or ultrahazardous conduct. 1 F. Harper & F. James, *The Law of Torts*, at 11–12 (1956).

Section 78–12–26(1) has always applied to actions in the nature of tort, and it appears that the legislature amended the statute's wording to include "injury to real property," 1933 Revised Statutes of Utah § 104–2–24, to avoid a substantive narrowing of the statute over time and to ensure that the statute would apply to tortious injuries to real property, whether intentional or negligent. Nothing supports the district court's apparent determination that inserting the words "injury to real property" was intended to expand section 78–12–26(1)'s reach fundamentally and to narrow that of section 78–12–23(2) correspondingly.

whereas section 78–12–23(2) has always been directed to actions based on a breach-of-contract theory. In fact, this matter has apparently been so well understood that we have found only one case that has even obliquely dealt with the issue. In *Thomas E. Jeremy Estate v. Salt Lake City*, 87 Utah 370, 374, 49 P.2d 405, 407 (1935), we applied the almost identical predecessor of section 78–12–23(2) to a case in which a breach of contract had caused property damage. The case at bar presents a similar fact situation involving a breach of contract resulting in property damage, and we see no reason to retreat from the approach we took in *Jeremy Estate*. Therefore, we decline to follow the district court's reading of the statute, and we hold that the six-year period provided in section 78–12–23(2) governs the claims brought by BYU in the present case.

The authorities on which the district court relied are either inapposite or unpersuasive. The court cited *Holm v. B & M Service, Inc.*, 661 P.2d 951 (Utah 1983), as authority for the proposition that section 78–12–26(1) applies to all actions for injury to real property. A reading of that case makes it evident that the Court was dealing with tortious injuries to property, not injuries to property resulting from a breach of contract. The Court held that the three-year period of limitation applies to causes of action for tortious injury to property, regardless of whether the injury was negligently or intentionally caused. *Holm* is simply inapposite here.

Similarly, *Utah Poultry & Farmer's Cooperative v. Utah Ice & Storage Co.*, 187 F.2d 652, 654 (10th Cir.1951), involved tortious injury to property. "[W]e are convinced beyond doubt that the action or claim here is in the nature of, or sounds in

tort. . . ." In dicta, the court expressed its view that section 78–12–26(2) was not limited to tort actions, but appeared to apply to all actions for taking, detaining, or injuring personal property regardless of the form of action. This dicta is contrary to our interpretation of the statute set forth above and we disavow it.

Having determined that the six-year period of limitation of section 78–12–23(2) applies in this case, the next question is the effect of its application. The statute of limitations began to run when BYU's cause of action accrued. Utah Code Ann. § 78–12–1 (1977). But when did the cause of action "accrue"?

■ The general rule is that a cause of action accrues upon "the happening of the last event necessary to . . . the cause of action." *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983). In construction contract cases, an owner's claim of defective construction against a general contractor is generally considered to accrue on the date that construction is completed.[3] We adopt this general rule and hold that BYU's causes of action accrued upon completion. Therefore, the Phase I claim accrued on November 1, 1976, and the Phase II claim accrued on October 31, 1978. The complaint was filed on February 1, 1983, less than six years after completion of Phase II. Therefore, BYU's claim against Christiansen is not time-barred by section 78–12–23(2). However, the claim against Paulsen arising from Phase I would appear barred.

■ BYU claims, however, that it is entitled to have the statute tolled until it discovered that it had a claim against Paulsen. It argues that the facts of this case warrant application of the discovery rule,

---

**3.** *E.g., Lumbermen's Mutual Casualty Co. v. Pattillo Construction Co.*, 254 Ga. 461, 462, 330 S.E.2d 344, 345 (1985) (period of limitation on action for breach of construction contracts runs from date of substantial completion of building); *Lewis v. Axinn*, 100 A.D.2d 617, 473 N.Y. S.2d 575, 576 (1984) (general rule is that completion of construction is date of accrual for owner's claims of defective construction against general contractor); *Alexander v. Gerald E. Morrissey, Inc.*, 137 Vt. 20, 24, 399 A.2d 503, 505

(1979) (absent fraudulent concealment, period of limitation begins running when construction is completed); *North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 83–84, 240 S.E.2d 345, 351 (1978) (cause of action against contractor accrues at completion of construction, not at the moment his employee performs negligently, because defects are subject to correction as long as building remains under construction).

i.e., the rule that a cause of action does not accrue until the plaintiff knew or should have known the facts giving rise to the cause of action. BYU contends that it did not know that Paulsen had permitted the installation of improper insulation on the hot water pipes until it dug the pipes up in May of 1979 and, therefore, the statute of limitations should not run on the claim until May of 1985. Because the action was filed on February 1, 1983, BYU asserts that it was not time-barred.

The general rule in Utah is that "mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations." *Becton Dickinson & Co. v. Reese*, 668 P.2d at 1257; *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981). We have sanctioned invocation of the discovery rule, but only when "the application of the general rule would be irrational or unjust." *Becton Dickinson*, 668 P.2d at 1257; *Myers*, 635 P.2d at 86. For example, in *Myers*, the plaintiffs in a wrongful death action did not know of the death of their ward until after the statute of limitations had expired. We found that such exceptional circumstances justified application of the discovery rule because the plaintiffs "had. no alternative other than to bring their action after the statutory limitation period had expired." 635 P.2d at 87.

We find nothing in the present case that warrants use of the discovery rule. The six-year period of limitation expired on BYU's cause of action against Paulsen on November 1, 1982. It is undisputed that BYU discovered the leakage and improper pipe insulation no later than May of 1979. Unlike the plaintiffs in *Myers*, BYU knew of its cause of action against Paulsen three and a half years before the limitation period expired. The discovery rule has no application when an action easily could have been filed between the date of discovery and the end of the limitation period.

We therefore affirm the trial court's dismissal of the action against Paulsen, but reverse its dismissal of the action against Christiansen.

HALL, C.J., and DURHAM, J., concur.

HOWE, Justice (concurring):

I concur.

As to the contention of the defendants that BYU's action was barred by Utah Code Ann. § 78–12–26 (1987), which governs actions for "injury to real property," the majority has correctly held that statute not applicable here where BYU's claims arise from a written contract between the parties. The Supreme Court of Colorado in *Duncan v. Schuster–Graham Homes, Inc.*, 194 Colo. 441, 578 P.2d 637 (1978), gave a similar construction to a Colorado statute which fixed a two-year limitation on all actions against any architect, contractor, engineer, or inspector brought to recover damages for "injury to person or property" caused by the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property. In that case, which was a suit by an owner against the builder, the court held that the words of the statute "injury to person or property" applied to actions seeking damages for personal injury or property damage, and not to actions seeking damages for structural deficiencies. In making the distinction, the court gave the following example:

> For example, if a roof were to collapse, injuring a homeowner and smashing his car's windshield, the owner would have claims for both his personal injury and damage to his car. Both claims would be within the contemplated coverage of [the two-year statute of limitations]. Both would be tort claims. In addition the homeowner would have a separate claim for the cost of repairing the defective roof; but this latter claim, being in the nature of a contract claim arising out of the sale of the house, would not be covered by this special statute of limitations.

As to BYU's contention that a cause of action for breach of contract should not accrue and the six-year statute of limitations should not begin to run until the breach is discovered, BYU has cited no case and my research has discovered no cases where the discovery rule was so ap-

plied. See, however, *City of Aurora v. Bechtel Corp.*, 599 F.2d 382 (10th Cir.1979), which was an action for professional malpractice controlled by a contract statute of limitations where the discovery rule was applied. The general rule is, as stated by the majority, that an owner's action for breach of a construction contract is generally considered to accrue on the date of completion of construction. Logically, I cannot see why if we apply the discovery rule in cases for professional negligence, the same rule should not also be applied in cases for breach of contract where the breach is a latent defect in the construction which becomes apparent only after the statute of limitations has otherwise run. In the reported cases, the refusal of the courts to apply a discovery rule in breach of contract cases has usually been ameliorated by allowing the owner to bring his action against the architect, designer, or builder for negligence, such as negligent design or negligent supervision of construction. *See* Annots., 1 A.L.R.3d 914, 90 A.L.R.3d 507, & 12 A.L.R.4th 866. The statute of limitations does not begin to run on a negligence claim until the damage is discovered, which may be after the limitation on a contract action has expired. However, in the instant case, even if Paulsen's alleged breach of contract is viewed as giving BYU a negligence action against it, BYU would still be barred since its action was filed more than three years after the damage (leaking of the pipes) was discovered.

BYU asserts that section 78–12–25.5, which provides that no action to recover damages for "injury to property" arising out of a defective and unsafe condition of an improvement to real property may be brought against the person performing or furnishing the design, planning, supervision of construction, or construction of such improvement more than seven years after the completion of construction, indicates a legislative intent that actions may be brought by owners against builders on a construction contract after the expiration of six years from the date of completion of construction but before seven years have elapsed. Such an interpretation would permit the maintenance of BYU's action against Paulsen. A short answer to this contention is that, as pointed out earlier, section 78–12–25.5 does not apply to actions founded on contract by owners against builders for defective construction. Such actions are not for "injury to property." This is the interpretation given by several courts to similar statutes of repose. *Duncan v. Schuster–Graham Homes, Inc.*, 578 P.2d 637 (Colo.1978); *Securities–Intermountain, Inc. v. Sunset Fuel Co.*, 289 Or. 243, 611 P.2d 1158 (1980); *see Kittson County v. Wells, Denbrook & Associates, Inc.*, 308 Minn. 237, 241 N.W.2d 799 (1976); *cf. Good v. Christensen*, 527 P.2d 223 (Utah 1974) (which apparently was a negligence action brought against the builder where we held section 78–12–25.5 applicable).

STEWART, Associate C.J., concurs in the concurring opinion of Justice HOWE.