Derran O'NEAL, Plaintiff and Appellee,

v.

DIVISION OF FAMILY SERVICES, STATE OF UTAH, and Dick Hill, Defendants and Appellants.

No. 890187.

Supreme Court of Utah.

Aug. 27, 1991.

Rehearing Denied Jan. 7, 1992.

**1140**

Robert L. Moody, Thomas S. Taylor, D. Eugene Thorne, Salt Lake City, for plaintiff and appellee.

R. Paul Van Dam, Linda Luinstra–Baldwin, Salt Lake City, for defendants and appellants.

ZIMMERMAN, Justice:

The State Division of Family Services ("DFS") appeals from a jury decision in favor of plaintiff Derran O'Neal. DFS argues, inter alia, that the trial court erred when it refused to dismiss O'Neal's negligence action against DFS for damages resulting from sexual abuse O'Neal suffered while in the custody of a DFS-approved foster parent. DFS contends that O'Neal's claim was barred by the Utah Governmental Immunity Act and the applicable statute of limitations. *See* Utah Code Ann. §§ 63–30–12, 78–12–25 (1991). We agree, vacate the judgment, and order the action against DFS dismissed.

In reviewing a denial of a motion to dismiss, we consider the facts and all inferences to be drawn therefrom in a light most favorable to the nonmoving party. *Myers v. McDonald,* 635 P.2d 84, 85 (Utah 1981); *Davis v. Payne & Day, Inc.,* 10 Utah 2d 53, 55, 348 P.2d 337, 338 (1960); *Williams v. Z.C.M.I.,* 6 Utah 2d 283, 285, 312 P.2d 564, 565 (1957). We recite the facts accordingly. *Myers,* 635 P.2d at 85; *Davis,* 10 Utah 2d at 55, 348 P.2d at 338. During 1973, Derran O'Neal, then thirteen years old and living with his divorced mother, was experiencing emotional problems and having difficulty at home and school. Dick Hill, a DFS-approved foster parent, became acquainted with O'Neal and ultimately became O'Neal's custodian. The custody arrangement was facilitated by DFS and entered into with the consent of O'Neal's mother. She hoped O'Neal would benefit from an association with a male adult role model. O'Neal remained in foster care at the Hill home until 1976, when he moved out. The formal custody arrangement terminated in 1977, when O'Neal turned eighteen.

While O'Neal was living with Hill, DFS monitored the custody arrangement. From 1973 through 1974, Hill sexually abused O'Neal. Although the sexual abuse ended in 1974, O'Neal was subjected to rejection, ridicule, and emotional abuse by Hill until he left the Hill home in 1976. O'Neal contends that he suffered severe emotional damage as a consequence of Hill's abuse.

In March 1986, O'Neal first told his mother Hill had sexually abused him. O'Neal asserts that until that date he had been psychologically unable to reveal the abuse, although he had always been aware of it. On August 21, 1986, O'Neal, through his mother as guardian ad litem, filed a complaint against Dick Hill and DFS. O'Neal could not locate Hill to serve him, and the case proceeded against DFS on a negligent placement and supervision theory.

DFS filed a motion to dismiss, arguing that the claim was barred by the four-year statute of limitations of section 78–12–25 of the Code and by O'Neal's failure to comply with the notice requirement of section 63–30–12 of the Governmental Immunity Act. Utah Code Ann. §§ 78–12–25, 63–30–12 (1991). O'Neal conceded that he brought the suit after the statute of limitations had run and that he filed his notice of claim after the period provided for by statute, but he maintained that the action was properly before the court for two reasons. First, he contended that both the relevant statute of limitations and the Governmental Immunity Act's notice requirement were tolled because the abuse had rendered him "incompetent," as that term is used in section 63–30–11(4)(a), to reveal the fact of the abuse from the date of the abuse until April 1986. Alternatively, O'Neal claimed that the "discovery rule" allowed him to file his action after the running of the two statutory periods because he was unable to "discover" the abuse and bring an action upon it while he was psychologically unable to reveal it.

The trial court did not pass on the "incompetence" claims, but did deny defendant's motion to dismiss, finding that "exceptional circumstances" justified giving O'Neal the benefit of the discovery rule. The case proceeded to trial, and the jury returned a verdict for O'Neal. The trial judge granted plaintiff's motion for an additur, doubling the damage award.

On appeal, DFS argues, inter alia, that the trial court erred when it refused to dismiss the complaint as barred by the Utah Governmental Immunity Act and the applicable statute of limitations.

■ In reviewing the trial court's ruling on the motion to dismiss, we accord the trial court's conclusions of law "no particular deference, but review them for correctness." *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985); *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25 (Utah 1990). However, we will also endeavor to uphold a trial court's ruling, even if we must consider alternative grounds on which the court

below did not rely. *See, e.g., Buehner Block Co. v. UWC Assoc.*, 752 P.2d 892, 895 (Utah 1988); *City Elec. v. Industrial Indem. Co.*, 683 P.2d 1053, 1060 (Utah 1984). There were two possible bases for denying the motion to dismiss and holding that O'Neal was entitled to avoid the limitation period: (i) O'Neal was incompetent; or (ii) he had not "discovered" his claim. Although the trial court passed on only the second, we will consider both since if either had offered a basis to allow O'Neal to proceed with his claim, we must affirm the trial court.

■ We first address the disability claim. The Utah legislature has recognized that the mechanical application of statutorily fixed limitations periods may unjustly penalize people who are unable to bring or maintain an action because of disability. To address this problem, the legislature has provided for the tolling of statutes of limitations during a plaintiff's disability. Both statutes at issue contain tolling provisions that operate to toll the statutory period during times of, inter alia, "mental incompetency."

The first of these, section 78–12–36 of the Code, is a general disability provision applicable to all statutes of limitation. *See* Utah Code Ann. § 78–12–36 (1991). It provides: "If a person entitled to bring an action ... is at the time the cause of action accrued, either under the age of majority or *mentally incompetent* and without a legal guardian, the time of the disability is not a part of the time limited for the commencement of the action." *Id.* (emphasis added). A similar provision is found in the Governmental Immunity Act: "If the claimant is under the age of majority, or *mentally incompetent* and without a legal guardian at the time the claim arises, the claimant may apply to the court to extend the time for service of notice of claim." Utah Code Ann. § 63–30–11(4)(a) (emphasis added). The tolling provisions in both statutes operate similarly so that if O'Neal qualifies for a disability extension under one, he also qualifies under the other. *See Blum v. Stone*, 752 P.2d 898, 899–900 (Utah 1988); *Scott v. School Bd. of Gran-*

*ite School Dist.,* 568 P.2d 746, 748 (Utah 1977).

■ We have not had occasion to construe the term "mentally incompetent" under these two provisions of the Code. However, an examination of the policy underlying the statute suggests that O'Neal does not come within the scope of the tolling provision. Tolling statutes based on mental incompetency are enacted to relieve from the strict time restrictions people "who are unable to protect their legal rights because of an overall inability to function in society." *McCarthy v. Volkswagen of Am., Inc.,* 55 N.Y.2d 543, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1982); *see also Sobin v. M. Frisch & Sons,* 108 N.J.Super. 99, 103–04, 260 A.2d 228, 231–32 (Super.Ct.App.Div.1969), *certification denied,* 55 N.J. 448, 262 A.2d 702 (1970). In determining what sort of lack of ability and capacity to protect one's legal rights qualifies for disability protection, courts generally hold that a person is incompetent for the purposes of a provision tolling a statute of limitations "when the disability is of such a nature to show him [or her] unable to manage his [or her] business affairs or estate, or to comprehend his [or her] legal rights or liabilities." 51 Am.Jur.2d *Limitation of Actions* § 187 (1970). In construing the probate code, we followed a definition of incompetence that made it somewhat easier to determine that the person was competent. *See In re Boyer,* 636 P.2d 1085, 1089 (Utah 1981). That competency determination focused on a person's ability to care for his or her personal safety and provide basic human needs such as food, shelter, and clothing.

O'Neal does not meet the requirements under either definition of incompetence such that the tolling provisions found in sections 78–12–36 and 63–30–11 are applicable. The facts show that from 1977 until 1986, when he revealed the abuse to his mother, O'Neal was able to care for his personal safety and provide himself with necessities such as food, shelter, medical care, and clothing. The record indicates that between 1977 and 1981, O'Neal received his general education degree and attended classes at Utah Technical College. He also worked at a number of odd jobs while living with his mother or with roommates. Since 1981, he has lived either alone or with a roommate and has worked at Rocky Mountain Helicopters. While working at Rocky Mountain, O'Neal has been promoted from driving truck to negotiating the recovery of warranty damages from suppliers for the failure of covered parts.

Our conclusion that O'Neal has not shown himself to be incompetent is consistent with the decision of our court of appeals in *Whatcott v. Whatcott,* 790 P.2d 578 (Utah Ct.App.1990), where the plaintiff raised the same incompetence argument. In *Whatcott,* the court rejected the claim that repression and psychological trauma caused by sexual abuse could be the basis for a finding of incompetency that would toll a statute of limitations. To support its conclusion of mental competence, the court specifically noted that plaintiff *Whatcott,* like O'Neal in this case, participated in what could be characterized as more or less normal activities. *Id.* at 581; *see also Strata v. Patin,* 545 So.2d 1180, 1192 (La. Ct.App.) (holding that psychological trauma resulting from abuse that impedes disclosure does not constitute mental incapacity for purposes of statute of limitations), *cert. denied,* 550 So.2d 618 (La.1989); *John R. v. Oakland Unified School Dist.,* 206 Cal. App.3d 1473, 240 Cal.Rptr. 319, 323 (Cal. App.), *review granted,* 242 Cal.Rptr. 475, 746 P.2d 450 (1987), *aff'd in part,* 48 Cal.3d 438, 256 Cal.Rptr. 766, 769 P.2d 948 (1989); *DeRose v. Carswell,* 196 Cal.App.3d 1011, 242 Cal.Rptr. 368, 378 (Cal.Ct.App.1987).

O'Neal contends that in giving meaning to the term "incompetence" in code sections 78–12–36 and 63–30–11,\* we should reject the requirement of general incompetence and substitute a very broad definition. Specifically, he argues that if a plaintiff has any psychological condition that prevented him or her from bringing an action, that condition should toll the applicable statute of limitations on grounds of incompetence.

We reject this argument. First, it does violence to the term "incompetence" as it has been used up to this time. Second, the rule O'Neal urges upon us would undermine the operation of statutes of limitations by converting a rather narrowly available tolling provision into one that could reach an almost endless variety of situations. Under his proposal, any person otherwise competent could avoid a statute of limitations by claiming to have been psychologically disabled from asserting a specific legal claim before the statute of limitations ran. As we state below in dealing with an analogous problem under the discovery rule, if this sort of change is to be made in the law of limitations or some narrow exception is to be crafted to deal only with sexual abuse cases, the matter should be addressed to the legislature.

■ Having found that the trial court could not have denied DFS's motion on the basis of O'Neal's incompetency claim, we next consider the correctness of its determination that the discovery rule required tolling of the applicable statute of limitations and the notice of claim requirement. The discovery rule is a judicially created doctrine that permits a party to avoid the general principle that a cause of action accrues and the relevant statute of limitations begins to run "upon the happening of the last event necessary to complete the cause of action [and that] mere ignorance of the existence of a cause of action does not prevent the running of the statute of limitations." *Myers*, 635 P.2d at 86. Under the discovery rule, "the limitations period does not begin to run until the discovery of facts forming the basis for the cause of action." *Id.*

The *Myers* case summarized the state of the discovery rule as of 1981, noting that both the Utah courts and the legislature had made it applicable under specified circumstances. *Id.* In the present case, there is no legislative enactment under which O'Neal claims entitlement to the benefits of the discovery rule. Rather, he relies upon one version of the judicially developed discovery rule described in *Myers*, and that underlies the decision in that case. As described in *Myers*, courts may find the discovery rule applicable under two circumstances. First, where the plaintiff does not become aware of the cause of action because of concealment or misleading conduct by the defendant, the defendant is precluded from relying on the statute of limitations. Second, without regard to any showing that the defendant has prevented the discovery of the cause of action, the discovery rule may be applied where the case presents "exceptional circumstances or causes of action where the application of the general rule would be irrational or unjust." *Id.; see Klinger v. Kightly*, 791 P.2d 868, 872 (Utah 1990).

In determining whether a particular case or cause of action presented the "exceptional circumstances" that would make the application of a statute of limitations' bar "irrational or unjust," the *Myers* court indicated that a balancing test was appropriate. "The hardship the statute of limitations would impose on the plaintiff [was to be balanced against] any prejudice to the defendant from difficulties of proof caused by the passage of time." *Myers*, 635 P.2d at 87. The court in *Myers* found the requisite "exceptional circumstances" to be present. There, a husband and wife brought an action for the wrongful death of the wife's fourteen-year-old brother, who was their ward. The ward had disappeared almost three years before the action was filed. The relevant statute of limitations was two years. Although the plaintiffs diligently searched for the missing ward, they did not discover that he had been killed in a car accident until three months before filing the action. The trial court dismissed the wrongful death action. This court reversed.

In reaching the conclusion that exceptional circumstances were present, the court noted that the statute of limitations greatly harmed the plaintiffs because under the facts alleged, it was impossible for them to learn that the boy was dead within the relevant period. The effect of the statute would be to bar them from suing before they could have discovered that a cause of action had accrued. The court also noted that the problems of proof

caused by the delay were not significantly different for the defendant than for the plaintiffs. *Id.*

In the present case, O'Neal contends that his case presents exceptional circumstances because although he knew of the facts underlying his cause of action, he was psychologically unable to reveal them, much less to pursue his legal remedies. The difficulty with O'Neal's argument is that it seeks to have us apply the balancing analysis suggested by the *Myers* case without first focusing on a prerequisite to any application of the discovery rule—ignorance by the plaintiff of the facts giving rise to the cause of action. An analysis of *Myers* and other of our discovery cases demonstrates that all have required such a showing as a threshold matter, a showing that O'Neal cannot make.

In all but one of the cases following *Myers* in which the application of the discovery rule was sought, this court has rejected the claim because the plaintiffs were aware, or should have been aware, of the facts upon which a claim could be brought. *See Brigham Young University v. Paulsen Constr. Co.,* 744 P.2d 1370, 1374 (Utah 1987) (stating that where plaintiff is aware of facts serving as basis for cause of action three and one-half years before statute of limitations expires, the action is time-barred); *Auerbach Co. v. Key Sec. Police, Inc.,* 680 P.2d 740, 743–44 (Utah 1984) (stating that where plaintiffs offer no basis for invoking discovery rule where underlying cause of action is known and claim is brought one year late, discovery rule is inapplicable); *Becton Dickinson & Co. v. Reese,* 668 P.2d 1254, 1257 (Utah 1983) (refusing to apply discovery rule where plaintiff is aware of basis for claim before statutory period expired); *Lord v. Shaw,* 665 P.2d 1288, 1290–91 (Utah 1983) (stating that where plaintiff has access to the courts and is aware of facts giving rise to cause of action prior to running of statute, claim is time-barred). In none of these cases did the court even reach the stage of balancing the relative hardships to the parties to determine whether exceptional circumstances existed.

The only case since *Myers* in which the court reached the balancing stage of the analysis is *Klinger v. Kightly,* 791 P.2d 868 (Utah 1990). There, the plaintiffs, buyers of property, brought an action against the sellers because the property's apparent boundaries did not conform to the description in the deed. The sellers then filed a third-party claim against surveyors whom the defendants had commissioned some fourteen years earlier to survey the property. The surveyors argued that the third-party claim was time-barred. The trial court granted summary judgment in favor of the surveyors, and this court reversed, relying on *Myers.* In so ruling, we noted that the plaintiffs had no knowledge of the facts giving rise to their cause of action and that there was no evidence indicating that they should have pursued action which would have resulted in their discovery of the mistake in the survey. Under these circumstances, we concluded that the prejudice they would suffer by having their claim barred outweighed any prejudice to the defendant surveyors from the lapse of time. *Id.* at 872.

■ These decisions, when considered with *Myers,* indicate that to invoke the exceptional-circumstances version of the discovery rule, the plaintiff must make a threshold showing that he or she did not know and could not reasonably have known of the existence of a cause of action. In fact, this requirement would seem a definitional prerequisite to reliance on any version of the discovery rule, judicial or legislative. *See, e.g., Vincent v. Salt Lake County,* 583 P.2d 105, 107 (Utah 1978) (holding that defendant's false representations that concealed cause of action preclude statute of limitations defense).

Returning to the present case, there is no question that O'Neal was aware of the abuse. It occurred when he was a teenager, and he does not claim he was unable to recall it. Indeed, he argues that the vivid memories of the abuse made him unable to reveal it prior to the time he brought the suit. O'Neal asserts that his inability to disclose the abuse makes the discovery rule applicable. The problem

with this argument is that O'Neal's inability to *reveal* the abuse is not the same as his not *knowing* of the abuse.[1] O'Neal has at all times possessed knowledge of all the facts necessary to bring a claim. Any failure to bring a claim has been a result of his own inaction. Under our discovery rule cases, his knowledge of the facts underlying the cause of action precludes his reliance on that rule. Because the statute of limitations had run and the notice of claim period had elapsed, O'Neal's claim against DFS should have been dismissed.

The result we reach today is consistent with the majority of other courts that have addressed this issue. *See Bock v. Harmon*, 526 So.2d 292, 296, *cert. denied*, 531 So.2d 275 (La.1988); *E.W. v. D.C.H.*, 231 Mont. 481, 488, 754 P.2d 817, 821 (1988); *DeRose v. Carswell*, 196 Cal.App.3d 1011, 242 Cal.Rptr. 368, 370 (Cal.Ct.App.1988). We think it is also required by sound principles of judicial administration. If we were to hold that a plaintiff who was aware of the facts constituting a cause of action could claim the benefit of the discovery rule if that plaintiff could show that some psychological problem prevented him or her from bringing suit against a defendant— O'Neal's position—we would open the door to all manner of claims seeking to avoid the bar of statutes of limitations. If we are to make principled decisions, we cannot create an exception to a statute of limitations for O'Neal, an admittedly sympathetic figure, but deny the benefits of such a judicially created exception to a person who claims that some other psychological condition, such as an overacute sense of embarrassment or a pathological fear of offending another, prevented the bringing of his or her suit and justified the application of the discovery rule. *See Hackford v. Utah Power & Light Co.*, 740 P.2d 1281, 1286–87 (Utah 1987).

In making this decision, we in no way denigrate the trauma and the pain that O'Neal has suffered and continues to suffer. It is unfortunate that anyone in our society should be exposed to such reprehensible treatment at the hands of those who should be responsible to protect him or her. Nevertheless, we find ourselves constrained by the policy underlying the statute of limitations and principles underlying the discovery rule's narrow exception to the statute of limitations and conclude that under these circumstances, no other result is tenable.

Certainly, the legislature is not so constrained as we. If it chooses to adopt a special statute of limitations that is applicable to cases where sexual abuse of children is alleged or to recognize psychological blocks as effective in tolling only certain statutes of limitations, it is free to do so without extending the benefits of that rule to others who might argue that they, too, stand in an analogous position. The legislature need not be concerned that the principle that underlies some such specific piece of legislation will have consequences in other areas not covered by that legislation. But such a concern must trouble courts, the reach of whose rulings cannot be so neatly confined. *Id.* We note that the recent enactment of a special statute of limitations for sexual abuse crimes suggests that the legislature would not be deaf to such pleas. *See* Utah Code Ann. §§ 62A–4–511, 76–1–303 (1991).

It is also worth noting that this is not a case where the victim has so repressed the memory of the events that he or she has forgotten they occurred. We do not suggest how we would rule in a case where there had been temporary but total repression of the memory of the abuse. But we note that some courts have recognized the distinction between cases where the victim is aware of the events surrounding the abuse and cases where the victim has repressed all recollection of the trauma. *See, e.g., Johnson v. Johnson*, 701 F.Supp. 1363

---

1. Although O'Neal asserts that he was unable to reveal the facts surrounding his abuse, some evidence in the record indicates that he had revealed some information about the abuse to his friend Scott Stewart Yaeger. Obviously, his partial disclosure to a teenaged friend may not be the same as disclosure to his mother or the police. It does, however, undermine his argument that his psychological condition was such that he could not reveal the abuse until just before the filing of the claim.

(N.D.Ill.1988) (applying discovery rule in case of total repression); *Mary D. v. John D.*, 216 Cal.App.3d 285, 264 Cal.Rptr. 633, 639 (1989) (same), *review granted*, 268 Cal. Rptr. 283, 788 P.2d 1155, *review dismissed*, 275 Cal.Rptr. 380, 800 P.2d 858 (1990); *Meiers–Post v. Schafer*, 170 Mich.App. 174, 427 N.W.2d 606 (1988) (same). *But see Lindabury v. Lindabury*, 552 So.2d 1117 (Fla. Dist.Ct.App.1989), *review dismissed*, 560 So.2d 233 (1990); *Tyson v. Tyson*, 107 Wash.2d 72, 727 P.2d 226 (1986).

The verdict against DFS is vacated and the action ordered dismissed as to that defendant.

HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

HALL, C.J., concurs in the result.