Myrtle Lloyd **ALLRED; Dorothy Allred Solomon; et al., Plaintiffs-Appellees,**

v.

**Rena CHYNOWETH, Defendant-Appellant.**

No. 92–4041.

United States Court of Appeals, Tenth Circuit.

March 31, 1993.

James W. McConkie of Parker, McKeown & McConkie, Salt Lake City, UT, for plaintiffs-appellees.

L.G. Cutler, Salt Lake City, UT, for defendant-appellant.

Before McKAY, Chief Judge, SETH, Senior Judge, and MOORE, Circuit Judge.

JOHN P. MOORE, Circuit Judge.

This is an appeal from a judgment which the appellant claims should have been barred by the Utah statute of limitations. Plaintiffs brought this action against Rena Chynoweth for the wrongful death of Rulon Allred. In rulings on a motion to dismiss and a motion for summary judgment,

the district court concluded the statute of limitations did not bar the plaintiffs' cause of action. The court also granted summary judgment for the plaintiffs on the specific elements of the wrongful death claim. The case proceeded to trial on damages, and the jury awarded the plaintiffs $52,125,000. The defendant now appeals the district court's holding that the discovery rule applied to toll the statute of limitations until 1990. We affirm.

Rena Chynoweth was a member of the Church of the Lamb of God, a polygamist group led by Ervil LeBaron. On May 10, 1977, Ms. Chynoweth and other LeBaron "family" members, apparently acting at the direction of Mr. LeBaron, killed Rulon Allred, the leader of a rival polygamist group. Local police arrested Ms. Chynoweth in November, 1978, and in December, 1978, after preliminary hearings, the state court ordered her to stand trial.

Because of the disguise Ms. Chynoweth wore to commit the murder, witnesses were unable to identify her as the killer. Ms. Chynoweth also testified at trial and lied about her involvement in the crime. Ms. Chynoweth and her coconspirators were acquitted in March, 1979.[1]

After the criminal trial, Ms. Chynoweth went into hiding, moving often and concealing her identity. However, in 1990, she published a book, *Blood Covenant,* in which she admits shooting Rulon Allred. Since publishing the book, Ms. Chynoweth has made several public appearances to promote it and has openly recounted the details of the murder and her false testimony at trial. In July, 1990, the plaintiffs filed this diversity action.

Ms. Chynoweth moved to dismiss the wrongful death claims based on the Utah statute of limitations, but the district court denied the motion. In response to the plaintiffs' subsequent summary judgment motion, the defendant again argued the statute of limitations barred the cause of action. Specifically, she asserted disputed facts existed regarding when the plaintiffs

knew or had reason to know she was involved in the murder. Ms. Chynoweth did not dispute either the facts of the murder or her involvement in it.

The district court granted plaintiffs' motion, leaving for trial only the question of damages. Ms. Chynoweth declined to participate in that proceeding. Following entry of final judgment, she brought the matter before us in this appeal.

Because the question of plaintiffs' knowledge of their cause of action is of paramount concern, we begin our review mindful of the proposition that "the issue of when a plaintiff knew or with reasonable diligence should have known of a cause of action is a question of fact." *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). In this instance, however, the trial court determined on summary judgment the essential facts were undisputed, the discovery rule applied, and no reasonable plaintiff could have known of the cause of action prior to 1990. Therefore, we review the summary judgment decision de novo. *See Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990) (court must review grant or denial of summary judgment de novo, applying same legal standard as district court) (citing *Barnson v. United States,* 816 F.2d 549, 552 (10th Cir.), *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987)).

■ Utah law establishes a two-year statute of limitations for wrongful death actions. Utah Code Ann. § 78–12–28(2). The state general rule is "that a cause of action accrues upon the happening of the last event necessary to complete the cause of action." *Myers v. McDonald,* 635 P.2d 84, 86 (Utah 1981). Under this rule, a plaintiff's mere ignorance of the existence of a cause of action will not prevent the running of the limitations period. The intention behind this precept is " 'to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, mem-

---

**1.** In May, 1980, Mr. LeBaron was found guilty of the murder and sentenced to prison. He died

in prison of natural causes in August, 1981.

ories have faded, and witnesses have disappeared.' " *Id.* (quoting *Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)).

The Utah Supreme Court has recognized exceptions to the general rule, however. In three circumstances, the Utah courts apply the discovery rule to toll the statute of limitations " 'until the discovery of facts forming the basis for the cause of action.' " *Warren v. Provo City Corp.*, 838 P.2d 1125, 1129 (Utah 1992) (quoting *Myers*, 635 P.2d at 86); *O'Neal v. Division of Family Servs.*, 821 P.2d 1139, 1143 (Utah 1991). Those situations are:

> (1) ... where the discovery rule is mandated by statute; (2) ... where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct; and (3) ... where the case presents exceptional circumstances and the application of the general rule would be irrational or unjust, regardless of any showing that the defendant has prevented the discovery of the cause of action.

*Warren*, 838 P.2d at 1129 (footnotes omitted); *see also O'Neal*, 821 P.2d at 1143.

■ Because the wrongful death statute under which this action was instituted does not specifically provide for a delay of the accrual of the cause of action, only the concealment and exceptional-circumstances versions of the discovery rule are at issue here. For either version to apply, the plaintiffs must not have learned of the facts giving rise to the cause of action before the end of the limitations period. *Atwood v. Sturm, Ruger & Co.*, 823 P.2d 1064, 1065 (Utah 1992) (citing *Brigham Young Univ. v. Paulsen Constr. Co.*, 744 P.2d 1370, 1374 (Utah 1987)); *O'Neal*, 821 P.2d at 1144.

■ Under the concealment version of the discovery rule, a defendant who misleads the plaintiff or "causes a delay in the bringing of a cause of action is estopped from relying on the statute of limitations as a defense to the action." *Warren*, 838 P.2d at 1130. However, to invoke the concealment version, a plaintiff must show he

or she acted reasonably in not bringing the suit within the statutory period. The limitations period begins to run when the plaintiff has actual knowledge of the facts of the cause of action. *Vest v. Bossard*, 700 F.2d 600, 611 (10th Cir.1983) (McKay, J., concurring).

■ The exceptional-circumstances version of the discovery rule tolls the statute of limitations in cases where enforcement of the limitation would be irrational or unjust. This version requires a plaintiff to demonstrate he or she exercised due diligence in discovering the cause of action. *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983); *see Myers*, 635 P.2d at 87. If the plaintiff can prove due diligence, the court then determines the application of the discovery rule based on a balancing test: whether "the hardship the statute of limitations would impose on the plaintiff in the circumstances of th[e] case outweigh[s] any prejudice to the defendant from difficulties of proof caused by the passage of time." *Myers*, 635 P.2d at 87; *see Vest*, 700 F.2d at 602 (discovery rule applies when policy against stale claims is outweighed by unique circumstances of plaintiffs' hardship); *Klinger v. Kightly*, 791 P.2d 868, 872 (Utah 1990).

In this case, the district court determined the facts justify application of the discovery rule based on both the concealment and exceptional-circumstances versions of the rule. The court concluded Ms. Chynoweth attempted to mislead the police and the state court during the investigation and criminal trial. The court also held application of the statute of limitations would be irrational and unjust to the plaintiffs. In the district court's view, no reasonable plaintiff, exercising due diligence, could have discovered the existence of a claim against the defendant before Ms. Chynoweth's public disclosure of her involvement.

On appeal, Ms. Chynoweth first argues the discovery rule does not apply because the plaintiffs knew or should have known of the injury and its cause before the statute of limitations expired. To support her argument, she notes two facts: first, in December, 1977, the state court determined

four coconspirators should stand trial; second, in December, 1978, after a probable cause hearing, the state court found sufficient cause to believe Ms. Chynoweth committed the murder and bound her over for trial.

Ms. Chynoweth asserts these facts demonstrate the plaintiffs were aware of the nature of the injury giving rise to the action in 1977, and, after the probable cause hearings in 1977 and 1978, should have been aware of the cause of that injury. Thus, they should have had knowledge of the cause of action before the limitations period ended in 1979. At the very least, Ms. Chynoweth argues, the plaintiffs' cause of action accrued in 1980 when Ervil LeBaron was convicted of the murder.

Ms. Chynoweth relies on two cases to support her argument. In *Atwood,* 823 P.2d at 1064, the plaintiff was injured when his gun fell and discharged. The plaintiff's attorney informed him, before the statute of limitations ran out, that he might have a cause of action against the defendant. However, the plaintiff failed to file within the statutory period and gave no reason for his delay. Based on these facts, the Utah Supreme Court refused to apply the discovery rule. *Id.* at 1065. Similarly, in *Brigham Young Univ. v. Paulsen Constr. Co.,* 744 P.2d 1370, 1374 (Utah 1987), the court held the facts did not warrant application of the discovery rule since the plaintiff learned the defendant contractor's work caused damage to its buildings over three years before the limitations period ended. Ms. Chynoweth correctly cites these cases for the proposition that the discovery rule does not apply when a plaintiff became aware of the cause of action before the expiration of the limitations period. In relying on these cases, however, Ms. Chynoweth does not consider the unusual effect her subsequent acquittal has on her theory.

■ Momentarily putting aside consideration of the two versions of the discovery rule, we believe the threshold issue here is whether a reasonable plaintiff would have known a cause of action existed against Ms. Chynoweth after a jury acquitted her of the murder. Although the plaintiffs in this case knew Rulon Allred was murdered and, after the probable cause hearings, had reason to suspect Ms. Chynoweth committed the murder, the jury's acquittal logically would have substantially undercut that suspicion, if not eliminated it altogether. At least plaintiffs would no longer have had any incentive to pursue a claim against Ms. Chynoweth.

Ms. Chynoweth's argument that the plaintiffs should have known of the cause of action in 1980, when Ervil LeBaron was convicted, is also without merit in a case against her. She does not assert new information came to light in Mr. LeBaron's trial to indicate she committed the murder. Instead, Ms. Chynoweth claims the plaintiffs' failure to sue Ervil LeBaron prevents them from stating a claim against her.

The defendant next argues, even if the discovery rule applies, the plaintiffs failed to exercise due diligence to discover the cause of action.[2] To support this argument, Ms. Chynoweth asserts at least two coconspirators testified at the probable cause hearings concerning her involvement in the crime. This testimony, she contends, would have led a diligent plaintiff to file an action against her. In addition, at the time the state court ordered her to stand trial, five months remained before the expiration of the limitations period. Finally, she claims the plaintiffs' failure to initiate any investigation, or at least consult with a lawyer, after Mr. LeBaron's conviction indicates they did not diligently pursue their claims.

The district court determined, as a matter of law, the plaintiffs could not have discovered the facts surrounding Rulon Allred's death. The court found the plaintiffs reasonably relied on the jury's determination in the criminal case that Ms. Chy-

---

**2.** As already noted, the question of plaintiffs' diligence goes only to the issue of exceptional circumstances and is not part of the concealment paradigm.

noweth was not guilty.[3]

We hold the district court correctly concluded both versions of the Utah discovery rule apply to this case. Ms. Chynoweth's use of a disguise in committing the murder and, more importantly, her false testimony at trial misled the criminal jury and the plaintiffs. After lying at trial and convincing a jury to acquit her, she cannot argue the plaintiffs should have known a cause of action existed based on probable cause hearings. Moreover, a reasonable plaintiff, exercising due diligence, would not have been motivated to pursue an investigation against a person who had been found not guilty on the evidence presented in this instance. We are satisfied the facts demonstrating her culpability could not be, and were not, discovered until Ms. Chynoweth admitted the crime in her book.

Even under the most cautious view, the jury's verdict in the criminal case has to be an exceptional circumstance which would have deterred plaintiffs from investigating their cause of action. A suggestion that plaintiffs should have pursued an action against Ms. Chynoweth regardless of the verdict would improperly encourage people to file apparently groundless suits simply to prevent the running of the statute of limitations. *See Foil v. Ballinger*, 601 P.2d 144, 148 (Utah 1979) ("[T]o adopt a construction of [a statute] that encourages a person who experiences an injury, dysfunction or ailment, and has no knowledge of its cause, to file a lawsuit ... to prevent a statute of limitations from running is not consistent with the unarguably sound proposition that unfounded claims should be strongly discouraged.").

Ms. Chynoweth's active concealment of her role and the hardship the statute of limitations would impose on the plaintiffs justify application of both versions of the discovery rule. Moreover, the equities on plaintiffs' side certainly outweigh any prejudice to the defendant from the passage of time.

Because Ms. Chynoweth does not contest liability, she cannot assert the delay has impaired her ability to present a defense. Her only claim is that plaintiffs should not be able to recover because she successfully prevented them from discovering her liability for many years. That is not within the ambit of equitable concern which motivates the adoption of statutes of limitations.

**AFFIRMED.**

McKAY, Chief Judge, dissenting:

I respectfully dissent. There is no question that this wrongful death action was filed outside the applicable Utah statute of limitations. There is likewise no question that Plaintiffs knew of the tortious death of Mr. Allred well within that statutory period. What Plaintiffs and the majority of this court rely on is the assertion that one or both of two doctrines apply to toll the running of the statute. These are the doctrines of fraudulent concealment and exceptional circumstances.

My problem with this case is that, under Utah law, both the fraudulent concealment doctrine and the exceptional circumstances doctrine are only applicable if the plaintiff could not reasonably have known that she had a cause of action against the defendant within the limitation period. *Warren v. Provo City Corp.*, 838 P.2d 1125, 1129, 1130 (Utah 1992).[1] For me, the threshold

---

**3.** To support its conclusion, the court looked to *Williams v. Hartje*, 827 F.2d 1203, 1205 (8th Cir.1987), in which the plaintiffs' family member, Williams, died in jail. Another inmate testified at a coroner's inquest that he did not see or hear anything out of the ordinary. The coroner's jury determined Williams' death was not the result of criminal action. Twenty-four years later, the inmate revealed that he lied at the coroner's inquest; he saw two guards beat Williams, but, because of one of the guard's threats, he testified he had not seen anything. The Eighth Circuit affirmed the district court's denial of the defendants' motions to dismiss and for summary judgment based on the statute of limitations. The court stated "[i]t cannot be said that the plaintiffs failed to exercise due diligence in not discovering this alleged cover-up, because their only possible source of information was locked up in the mind of [the inmate] and remained there until he was ready to come forward with his story." *Id.* at 1206.

**1.** In earlier cases, the Utah Supreme Court referred to a plaintiff seeking to invoke the exceptional circumstances doctrine as having an obligation to "exercise[ ] due diligence in discovering" their cause of action. *Becton Dickinson & Co. v. Reese*, 668 P.2d 1254, 1257 (Utah 1983) (citing *Myers v. McDonald*, 635 P.2d 84, 87 (Utah

issue here is whether a reasonable plaintiff would have known that a cause of action existed against Ms. Chynoweth within the period allowed by the statute of limitations. Unlike the majority, I do not believe that the acquittal of Defendant in her trial for the murder of Mr. Allred plays any important role in the analysis of this case. If Plaintiffs reasonably could have known that they had a cause against Defendant before the criminal trial, Defendant's intervening acquittal under the "beyond a reasonable doubt" standard does not alter the legal sufficiency of the prior reasonable knowledge or excuse further diligence if, as I believe, the prior knowledge was sufficient to put her on notice of her cause of action.[2]

In any case, the determination that Ms. Chynoweth was not proven guilty beyond a reasonable doubt was not in any way a determination that Ms. Chynoweth did not commit the murder in this case and therefore would not be liable under a wrongful death cause of action. It is well established that

> an acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt.... [T]he jury verdict in the criminal action did not negate the possibility that a preponderance

of the evidence could show that [the defendant committed the crime charged]. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 361–62, 104 S.Ct. 1099, 1104, 79 L.Ed.2d 361 (1984).[3] Indeed, "[t]he very purpose of distinguishing the criminal standard of proof is to protect against conviction on a showing that might satisfy the lower standard generally required in civil actions." 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4422, at 210 (1981).[4]

There are numerous published cases where the prosecution or some other litigant has attempted to prove, by a preponderance of the evidence, that a criminal defendant actually committed a crime for which he had been acquitted under the "beyond a reasonable doubt" standard. They have arisen in such diverse settings as parole revocation, sentence enhancement, determination that a person was a co-conspirator for hearsay purposes, and forfeiture proceedings. *See, e.g., One Assortment of 89 Firearms,* 465 U.S. at 361–62, 104 S.Ct. at 1104 (forfeiture); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 235, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972) (per curiam) (forfeiture); *United States v. Galloway,* 976 F.2d 414, 431 n. 4 (8th Cir.1992) (en banc) (Beam, J., dissenting) (collecting cases), *cert. denied,* —— U.S. ——, 113 S.Ct. 1420, 122 L.Ed.2d 790

---

1981). I agree with the majority's apparent conclusion that there is no difference between the "reasonableness" standard of *Warren* and the "due diligence" standard of *Becton* and *Myers,* and that the proper phrasing of the test is whether a "reasonable plaintiff, exercising due diligence" would have been aware of the cause of action. Maj. Op. at 532.

**2.** I do not concede that her pre-criminal trial knowledge was insufficient.

**3.** The holding of *One Assortment of 89 Firearms* in the context of weapons forfeiture has been superceded by the amendments to 18 U.S.C. 924(c) (1988) contained in the Firearms Owner's Protection Act, Pub.L. No. 99–308, § 104, 100 Stat. 449, 457 (1986).

**4.** The Supreme Court determined in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the "beyond a reasonable doubt" standard was constitutionally required in crimi-

nal cases. It discussed at length the vast differences between the two standards:

> [W]e reject the ... suggestion that there is, in any event, only a "tenuous difference" between the reasonable-doubt and preponderance standards. The suggestion is singularly unpersuasive. In this very case, the trial judge's ability to distinguish between the two standards enabled him to make a finding of guilt that he conceded he might not have made under the standard of proof beyond a reasonable doubt. Indeed, the trial judge's action evidences the accuracy of the observation of commentators that "the preponderance test is susceptible to the misinterpretation that it calls on the trier of fact merely to perform an abstract weighing of the evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of the proposition asserted." Dorsen & Rezneck, [In Re Gault *and the Future of Juvenile Law,* 1 Family L.Q. No. 4, at 1,] 26–27.

*Id.* at 367–68, 90 S.Ct. at 1074.

(1993); *Johns v. Shulsen,* 717 P.2d 1336, 1338 (Utah 1986) (collecting cases); Wright et al., *supra,* § 4422 n. 2 (collecting cases). These cases generally enter the law books when the defendant attempts, unsuccessfully, to invoke issue preclusion based on his prior acquittal. While a few of them have been on appeal from an erroneous dismissal, *e.g. One Lot Emerald Cut Stones, supra,* many others have been on appeal from a successful showing, by a preponderance of the evidence, that, notwithstanding the acquittal, the defendant did commit the crime charged, *e.g., One Assortment of 89 Firearms; United States v. Rodriguez–Gonzalez,* 899 F.2d 177 (2d Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990).

This precise situation recently arose in the State of Utah in *Johns v. Shulsen,* 717 P.2d 1336 (Utah 1986). Soon after being paroled from a prior conviction, the plaintiff was arrested and charged with a variety of sexual and weapons offenses. *Id.* at 1336. He was acquitted on all counts. *Id.* Nevertheless, the government successfully proved, by a preponderance of the evidence, that the plaintiff violated his parole by committing the charged offenses. *Id.* at 1336–37. The Utah Supreme Court rejected his petition for habeas corpus, stating:

> It is universally recognized that the standard of proof in civil actions is by a preponderance of the evidence.... By contrast, in a criminal prosecution every element of the offense must be established beyond a reasonable doubt. Therefore, *the failure of the State to prove the elements of the charged crime beyond a reasonable doubt cannot logically estop another fact finder ... from finding that those same elements were proven by a preponderance of the evidence.*

*Id.* at 1338 (emphasis added) (citations omitted).

Given this large body of cases where litigants have succeeded in doing what Plaintiffs did not even attempt, I cannot accept the majority's claim that Plaintiffs acted reasonably in not bringing the suit earlier.

A very similar situation arose several years ago in Louisiana in *Richards v. LaCour,* 515 So.2d 813 (La.Ct.App.1987). The defendant was arrested for arson in connection with a fire that damaged the plaintiffs' building in July, 1983. *Id.* at 815. The defendant was arrested that October, and was indicted that November. *Id.* at 815, 818. He pleaded not guilty. *Id.* at 815. In June 1986, well after Louisiana's one year statute of limitations had run, he changed his plea to guilty. *Id.* The plaintiffs filed suit approximately one month after his guilty plea. *Id.*

The Louisiana Court of Appeal held that the statute of limitations barred the plaintiffs' suit. The court rejected the plaintiffs' claim that they could not have filed their suit earlier because the defendant falsely denied responsibility and because they were unable to obtain information from law enforcement officials due to the pending criminal charges. The court explained:

> [P]laintiffs knew of [the defendant's] criminal indictment at least by November 18, 1983.... This was sufficient to put them on notice as to his identity and to call for inquiry which is all that is necessary to commence the running of [the limitations period]. Between the time of defendant's indictment and guilty plea, plaintiffs were aware of the defendant's identity and had the opportunity to timely file civil proceedings against him....
>
> ....
>
> ... Plaintiffs' failure to obtain information from law enforcement officials ..., because of the pending criminal charges against defendant, does not prevent [the limitations period] on their claim from commencing to run from the date of the fire any more than would a claim by a plaintiff involved in an accident, that he had to await until he knew the exact facts of a defendant's negligence before filing suit, would prevent [the limitations period] from commencing to run from the date of the accident. [The limitations period] begins to run when there is notice enough to call for inquiry about a claim, not from the time

when the inquiry reveals facts or evidence sufficient to prove the claim.

*Id.* at 817–18.

I do not claim that Louisiana's rule on accrual is identical to Utah's. It is well established in Utah

that a cause or right of action arises the moment an action may be maintained to enforce it and that the statute of limitations is then set in motion. The test, therefore, is, Can an action be maintained upon the particular cause of action in question? If it can, the statute begins to run.

*State Tax Comm'n v. Spanish Fork,* 99 Utah 177, 100 P.2d 575, 577 (1940) (quoting *Sweetser v. Fox,* 43 Utah 40, 134 P. 599, 602 (1911)); *see also Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.,* 794 P.2d 11, 19 (Utah 1990) ("A tort cause of action accrues when it becomes remediable in the courts, that is, when all elements of a cause of action come into being.") (citing *Spanish Fork*). This is somewhat different from the standard applied in *Richards.*

Nevertheless, the point of *Richards* remains the same, because the present Plaintiffs had a maintainable action many years before they filed their suit. There were no pre-requisites to filing suit that had not occurred and that would have rendered their action unripe. Ms. Chynoweth's tortious actions were complete, and her identity was well known to Plaintiffs. She was amenable to service of process. Further, Plaintiffs could have presented, within the statutory period, the testimony of two different accomplices detailing Ms. Chynoweth's participation in the murder.

I recognize that the case against Ms. Chynoweth was far from airtight at the time of her first trial.[5] Nevertheless, *Spanish Fork* and *Davidson Lumber* clearly do not stand for the proposition that an action is not "maintainable," and that the statute of limitations does not begin running, until the plaintiff possesses evidence so overwhelming that success is assured. Thus, absent a specific exception, the Utah statute of limitations bars this action. While there are, under *Warren,* exceptions to the statute in some circumstances, these are limited to litigants who were unaware that they had a basis for a suit. They do not extend to any litigant who was uncertain of victory.

The majority reinforces its arguments with reference to Ms. Chynoweth's actions. It states: "After lying at trial and convincing a jury to acquit her, she cannot argue that plaintiffs should have known a cause of action existed based on probable cause hearings." Maj.Op. at 532. The majority concludes by stating:

Because Ms. Chynoweth does not contest liability, she cannot assert the delay has impaired her ability to present a defense. Her only claim is that plaintiffs should not be able to recover because she successfully prevented them from discovering her liability for many years. That is not within the ambit of equitable concern which motivates the adoption of statutes of limitations.

*Id.* at 532.

Both these statements fit squarely within Utah exceptions to the statute of limitations. The former statement is an example of the doctrine of fraudulent concealment, "whereby a defendant who causes a delay in the bringing of a cause of action is estopped from relying on the statute of limitations as a defense to the action." *Warren,* 838 P.2d at 1130. The latter statement is an example of the doctrine of exceptional circumstances, which occurs when the unique facts of a case "render the application of a statute of limitations irrational or unjust." *Id.* at 1129.

These arguments, however, do nothing to meet the threshold requirement for both of these doctrines that the plaintiff have acted reasonably in not filing her action sooner.

---

5. The judge presiding over the criminal proceedings stated that "[o]ther than the testimony of the two accomplices, no evidence was presented which, without the aid of the testimony of the accomplices, tended to connect the defendant with the commission of any of the offenses charged." (Appellant's App. at 20.) As the district court noted, the testifying eyewitnesses to the murder were unable to positively identify Ms. Chynoweth. (*Id.* at 72.) In her book, Ms. Chynoweth admitted that she wore a disguise to confuse witnesses. (*Id.* at 27.)

Utah has clearly made a policy determination that *even if* the defendant fraudulently conceals facts, and *even if* exceptional circumstances are present which make the bar of the statute of limitations irrational and unjust, the defendant will nevertheless not be held accountable if the plaintiff unreasonably delayed filing her suit. *See id.* at 1129, 1130.[6] The majority concedes as much. *See* Maj. Op. at 530.

There is absolutely no evidence or even an assertion that Plaintiffs made any attempt to pursue their action, or for that matter even consult counsel, to determine their rights and obligations until after Defendant published her book. One is left to conclude that what is involved here are plaintiffs who reasonably knew they had a cause of action against a defendant but elected not to pursue it because of an assumption that the defendant was impecunious. The publication of Defendant's book with its despicable confession created the possibility of income which could be attached. While clearly understandable, that objective does nothing to toll the statute of limitations. What is more, in light of *Simon & Schuster, Inc. v. New York Crime Victims Bd.,* —— U.S. ——, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991), it seems doubtful that Utah could constitutionally amend its statute to toll until publication produced sufficient funds to make the suit economically, as opposed to legally, viable. On this record that is precisely what the trial court and the majority have done by adjustment of the existing Utah limitations doctrine.

Courts which enforce statutes of limitations are rarely on the side of the angels. Nonetheless, for centuries, and for good and sufficient reasons, legislatures have enacted and courts have enforced statutes of limitations with the emotionally uncomfortable results of this case.

I freely concede that Ms. Chynoweth is an utterly unsympathetic defendant. Doctrines of repose nonetheless dictate that if a party reasonably should have been aware of the existence of a cause of action, the failure to file the action in a timely manner precludes an examination of the merits of the matter in any way.

---

6. This rule merely reflects the ancient maxim that "[e]quity aids the vigilant, not those who slumber on their rights." *Standard Oil Co. of N.M. v. Standard Oil Co. of Cal.,* 56 F.2d 973, 975 (10th Cir.1932).